UNITED STATES of America, Appellant,

v.

The SOUTH HALF OF LOT 7 AND LOT 8, BLOCK 14, KOUNTZE'S 3RD ADDITION TO THE CITY OF OMAHA, etc., et al., Appellees.

No. 88–2212NE.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1989.

Decided Aug. 3, 1990.

**489**

Steven A. Russell, Lincoln, Neb., for appellant.

James Martin Davis, Omaha, Neb., for appellees.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, and BEAM, Circuit Judges, En Banc.

FAGG, Circuit Judge.

■ Despite Congress's statement in 18 U.S.C. § 1955(d) (1988) that "[a]ny property, including money, used in [an illegal gambling business] may be seized and forfeited to the United States," the district court held "the words 'any property' ... do not encompass real property" and dismissed the forfeiture actions brought by the government against thirteen parcels of real estate allegedly connected with illegal gambling operations. Because the district court's interpretation finds no support in the plain meaning of the words "any property," we reverse and remand for further

proceedings on the government's complaints for forfeiture.

The task of resolving the dispute over the scope of section 1955(d)'s forfeiture provision begins with the language of the statute itself. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). When used without qualification, the word "property" includes both real and personal property within its sweep. *Fidelity & Deposit Co. v. Arenz*, 290 U.S. 66, 68, 54 S.Ct. 16, 17, 78 L.Ed. 176 (1933); *Black's Law Dictionary* 1095 (5th ed. 1979); *Webster's Third New International Dictionary* 1818 (1981). Indeed, Congress's use of the word "any" to describe property "undercuts a narrow[er] construction." *United States v. James*, 478 U.S. 597, 605, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986). The language of the forfeiture provision is plain and clear: real property used in illegal gambling operations may be seized and forfeited. The Second Circuit shares our view. *United States v. The Premises & Real Property at 614 Portland Ave.*, 846 F.2d 166, 167 (2d Cir.1988) (per curiam), *aff'g* 670 F.Supp. 475, 478 (W.D.N.Y.1987).

Although we believe the plain meaning of the forfeiture provision settles the question before us, we also look to the legislative history to see whether there is a " 'clearly expressed legislative intention to the contrary.' " *James*, 478 U.S. at 606, 106 S.Ct. at 3121 (quoted citation omitted). In doing so, we must keep in mind there is " 'no more persuasive evidence of the purpose of a statute than the words by which [Congress] undertook to give expression to its wishes.' " *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (quoted citation omitted). "The mere fact that statutory provisions conflict with language in the legislative history is not an exceptional circumstance permitting a court to apply legislative history rather than the statute." *In re Erickson Partnership*, 856 F.2d 1068, 1070 (8th Cir.1988); *see also In re Sinclair*, 870 F.2d 1340, 1341 (7th Cir. 1989). Courts must enforce a statute according to its plain terms "except in the

'rare cases [in which] [a] literal application ... will produce a result demonstrably at odds with the intention of [the] drafters.'" *Ron Pair Enters.*, 489 U.S. at 242, 109 S.Ct. at 1031 (quoted citation omitted).

In this instance, the relevant legislative history is sparse and it contains no compelling signal that Congress gave the words "any property" in section 1955(d)'s forfeiture provision anything other than their plain meaning. The property owners nevertheless argue that a single exchange between one senator and an assistant attorney general establishes that Congress never intended real property to be forfeited under the statute. We disagree.

During a senate subcommittee hearing considering a bill aimed at curtailing illegal gambling, an assistant attorney general was asked by the subcommittee's chairman for his thoughts on adding "a forfeiture provision that would cover the equipment, adding machines, and money" used in illegal gambling operations. In responding, the assistant attorney general proposed a forfeiture provision containing language— "any property"—that did not exclude real property. The full committee adopted this language and, several months later, forwarded the bill for consideration. Ten months after the gambling bill left the committee, Congress enacted the forfeiture provision leaving the "any property" language intact. *See* Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 803(a), 84 Stat. 922, 938; *see also Measures Relating to Organized Crime: Hearings on S. 30, S. 974, S. 975, S. 976, S. 1623, S. 1624, S. 1861, S. 2022, S. 2122, & S. 2292 Before the Subcomm. on Criminal Laws & Procedures of the Senate Comm. on the Judiciary*, 91st Cong., 1st Sess. 397, 412 (1969); S.Rep. No. 617, 91st Cong., 1st Sess. 1, 17 (1969).

This legislative history does not show that either the committee or Congress gave the words "any property" anything other than their plain meaning. *See United States v. Taylor*, 487 U.S. 326, 345, 108 S.Ct. 2413, 2424, 101 L.Ed.2d 297 (1988) (Scalia, J., concurring in part) (when statutory text is unambiguous, we must assume

Congress voted on "what the text plainly said"). Indeed, one member of the House remarked during floor debate that the bill's forfeiture provision would permit "any property used in illegal gambling ... to be seized and subjected to judicial forfeiture procedures." 116 Cong.Rec. H35,295 (daily ed. Oct. 7, 1970) (statement of Rep. Poff).

As the Supreme Court has aptly observed, " '[t]he plain words and meaning of a statute cannot be overcome by a legislative history [that] ... may furnish dubious bases for inference in every direction.'" *Ex parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949) (quoted citation omitted). Even if an isolated encounter between one senator and an assistant attorney general in the early stages of the legislative process raises questions about Congress's legislative intent, the answers to those questions are inconclusive. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982); *see also Wisconsin R.R. Comm'n v. Chicago, Burlington & Quincy R.R.*, 257 U.S. 563, 589, 42 S.Ct. 232, 237, 66 L.Ed. 371 (1922) (legislative history is "only admissible to solve doubt and not to create it"). That being the case, we must carry out Congress's purpose by adhering to "the plain language of the statute itself." *United States Marshals Serv. v. Means*, 741 F.2d 1053, 1056 (8th Cir.1984) (en banc).

The property owners also argue that if Congress had intended to permit the forfeiture of real property under section 1955(d), Congress would have mentioned land specifically in the statute. We disagree. We believe "Congress could not have chosen ... broader words to define the scope of what was to be forfeited." *United States v. Monsanto*, — U.S. —, 109 S.Ct. 2657, 2662, 105 L.Ed.2d 512 (1989). The words in question here are commonly understood, and "Congress'[s] failure to supplement [section 1955(d)'s] comprehensive phrase— 'any property'—with an exclamatory 'and we even mean [real property]' does not lessen the force of the statute's plain language." *Id.* at 2663 (emphasis omitted). Furthermore, similar forfeiture provisions

contained in the 1970 versions of the Racketeer Influenced and Corrupt Organizations (RICO) and Continuing Criminal Enterprise (CCE) statutes, "which [did] not specifically mention real property, have been interpreted by the courts to provide for the seizure of real property." *614 Portland Ave.*, 670 F.Supp. at 478 (citing RICO and CCE and cases construing original forfeiture provisions of those statutes).

The property owners also point out, as did the defendants in *614 Portland Avenue*, "that even though [ ] numerous cases [ ] interpreted both RICO and CCE to allow [ ] the forfeiture of real property, Congress still felt it necessary in 1984 to amend both statutes to [ ] include [specific] provisions for the forfeiture of real property." *Id.* The property owners thus argue Congress's failure to amend section 1955(d) at the same time it amended RICO and CCE shows Congress clearly understood the phrase "any property" did not include real property. We reject this argument for the reasons given in the panel's opinion. *United States v. South Half of Lot 7 & Lot 8*, 876 F.2d 1362, 1366 (8th Cir.1989).

Finally, the property owners argue that Congress's incorporation into section 1955(d) of customs and admiralty procedural rules relating only to personal property suggests that Congress intended the statute to provide only for the forfeiture of personal property. We agree with the district court in *614 Portland Avenue* that "[t]his argument fails to take into account that in those cases where Congress has chosen [ ] specifically [to] include real property in the types of property subject to forfeiture, it has nonetheless chosen to apply the procedural rules of the customs and admiralty law[s]." 670 F.Supp. at 477.

Having carefully considered all of the property owners' arguments, we conclude the words "any property" in section 1955(d) plainly permit the government to forfeit real property. We thus reverse the district court's order dismissing the forfeiture actions and remand for further proceedings on the government's complaints for forfeiture.

HEANEY, Senior Circuit Judge, dissenting, with whom LAY, Chief Judge, and McMILLIAN, Circuit Judge, join.

I would affirm the district court for the reasons set forth in this court's panel opinion of June 1, 1989. *United States v. South Half of Lot 7 & 8, Block 14*, 876 F.2d 1362 (8th Cir.), *vacated*, 883 F.2d 53 (8th Cir.1989).

The majority opinion rejects the fundamental premise of the panel opinion that "[f]orfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *Id.* at 1365 (quoting *United States v. One Ford Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1938)). It also rejects the view that other federal statutes dealing with forfeiture and the legislative history of the statute indicate that Congress had no intention of subjecting real property, including personal residences, to forfeiture under 18 U.S.C. § 1955(d). I continue to believe this interpretation was thoroughly documented and fully supported in the panel opinion.

I would also affirm the district court for the alternate reason set forth in the panel opinion: The procedures employed by the government in effecting the forfeiture in this case were unconstitutionally deficient. "The deficiency was the failure of the government to obtain a determination from a judicial officer that public cause existed to seize the properties prior to the seizures." *Id.* at 1369. As the author of the opinion, Senior Judge William Hanson, points out: "The warrants allowing the seizure of the property were issued by a deputy clerk based on complaints which merely restated the words of the statute in general cursory allegations." *Id.* at 1370.

The majority in this en banc opinion does not discuss the alternative holding. In the dissent to the panel opinion, however, the author stated that the fourth amendment theory advanced by Judge Hanson was not raised in the parties' motion to dismiss or considered by the district court. I disagree. As noted in the panel opinion, the appellees, in their motion to dismiss, recited as grounds for dismissal the fact that

"[t]he warrants allowing the seizure of the property were issued by a deputy clerk based on complaints which merely restated the words of the statute in general cursory allegations," a failure that "was clearly a constitutional violation putting the seizures beyond those authorized by the law." *Id.* at 1370. Moreover, the district court stated that it is " 'inconceivable' that the statute allows 'the government to seize a person's home as in these cases.' " *Id.* at 1370.

Accordingly, I dissent.