UNITED STATES of America,
Plaintiff–Appellee,

v.

ON LEONG CHINESE MERCHANTS
ASSOCIATION BUILDING, et al.,
Defendants–Appellants.

No. 90–1191.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1990.

Decided Nov. 14, 1990.

Elizabeth M. Landes, Asst. U.S. Atty., Office of U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Lawrence F. Ruggiero, Siff, Rosen & Parker, New York City, John M. Beal, Chicago, Ill., for defendants-appellants.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal of an order granting summary judgment to the United States on a civil forfeiture claim. The property ordered forfeited is the On Leong Chinese Merchants Association Building ("Building"), a three-story landmark located in Chicago's Chinatown and owned by claimant, the On Leong Chinese Merchants Association ("On Leong"). The government alleged that the Building housed an illegal gambling business, and sought forfeiture pursuant to 18 U.S.C. § 1955(d). Finding that probable cause existed to believe that the Building was subject to forfeiture, the district court granted summary judgment for the government.

On appeal, claimant argues that the government failed to establish probable cause and that the district court improperly denied its motion for a stay of summary judgment proceedings on the Building. Claimant also contends that the forfeiture of real property, as opposed to personal property, is simply not authorized by 18 U.S.C. § 1955(d). For the reasons set forth below, the district court's entry of summary judgment is affirmed.

## I. BACKGROUND

The affidavit of F.B.I. Special Agent James Whitmer accompanied the government's verified complaint filed on June 15, 1988. According to Agent Whitmer, the Chicago Police Department discovered gambling activity at the On Leong Building on three separate occasions from 1984 to 1986. On September 2, 1984, police officers entered the Building with a warrant. They found the entrance to the second floor blocked by iron gates and equipped with a buzzer. Upon reaching the second

floor, they observed people playing the Chinese gambling game of Fan–Tan. The officers arrested sixteen individuals and confiscated chips, buttons, dice, and an unspecified amount of currency. On February 22, 1985, officers entered forcibly with a warrant after being refused entry to the second floor. Eleven Fan–Tan players were arrested. Police recovered over $30,000 in chips and $3,805 in currency from the players and from a safe located in the adjacent cashier's room. On March 14, 1986, the officers again entered the Building with a warrant. This time they discovered gambling in the basement. They arrested eighteen people and seized currency, chips, Fan–Tan playing pieces, and two Fan–Tan cloths. The Chicago Police charged those arrested on all occasions with, *inter alia,* violations of Sections 28–1 and 28–3 of Chapter 38 of the Illinois Revised Statutes.[1] Copies of police reports were filed with the district court, attached as exhibits to Agent Whitmer's affidavit.

The F.B.I. also subsequently raided the On Leong Building. F.B.I. Special Agent George Ng, who later filed his own affidavit, observed and participated in gambling games in the Building while working undercover. On April 19, 1988, after passing through a door equipped with an electronic buzzer and a closed circuit television camera, he climbed to the second floor. There he observed the Chinese games of Fan–Tan and Pai Gow being played at separate tables. At least 50 bettors or spectators were present. Bettors wagered as much as $3,000 and $4,000 at the Pai Gow table. Agent Ng, who speaks fluent Mandarin Chinese, purchased $500 in chips from a cashier. He placed bets, receiving 90% of his winnings from a banker at the Fan Tan table. The house kept the remaining 10%. He was present during a shift change in which six new workers replaced four workers at the Fan Tan table and two at the Pai Gow table.

Agent Ng returned on the following evening, April 20, 1988, with Agent Whitmer. The two executed a federal search warrant and interrupted similar gambling activity. One hundred people were present at the time of the search. The agents confiscated over $300,000 in currency, chips worth over $75,000, video equipment, and gambling paraphernalia. Agent Ng later identified three of those present at the raid as corporate officers of the On Leong Chinese Merchants Association. One of the officers, Chi Chak Leung, had served as the cashier of the gambling operation, and another, Henry H. Fong, had supervised the floor.

The government filed a forfeiture complaint pursuant to 18 U.S.C. § 1955(d), which forbids the use of property for illegal gambling activities. Count I sought the forfeiture of the defendant real property, and Count II sought forfeiture of the currency, chips, and equipment seized in the April 20, 1988 raid. On Leong filed a claim to the Building and other seized property on June 24, 1988. The government subsequently moved to stay discovery with respect to the forfeiture action because of a concurrent, related criminal investigation. After this motion was granted and discovery was stayed, the government moved for summary judgment with respect to all the property. On Leong responded by asking for a stay of summary judgment proceedings. The parties agreed to a continuance of the summary judgment motion for all seized property except the Building. The district court denied the claimant's motion for a stay with respect to the Building and granted the government's summary judgment motion, ordering the forfeiture of the Building. Claimant later filed a Petition for Mitigation of Forfeiture addressed to the Attorney General, who is empowered to mitigate or remit a forfeiture. See 19 U.S.C. § 1618; 28 C.F.R. § 9.1–9.7. That petition is still pending. Claimant also filed a timely notice of appeal. Execution of the district court forfeiture decree has been stayed pending this appeal.

## II. DISCUSSION

### A. Probable Cause Showing

18 U.S.C. § 1955 is a federal anti-gambling statute. Subsection (d) of that stat-

---

**1.** Section 28–1 prohibits gambling and Section 28–3 makes it illegal for one to "knowingly permit[ ] any premises or property owned by him or under his control to be used as a gambling place * * *" Ill.Rev.Stat. ch. 38, ¶ 28–1, ¶ 28–3 (1989).

ute pertains to forfeiture and authorizes the seizure of "any property, including money, used in violation of the provisions of this section...."[2] Subsection (b)(1) defines an "illegal gambling business" as:

a gambling business which—

(i) is a violation of that law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(b)(1).

Claimant argues that forfeiture is improper because the government failed to prove one of the elements of an "illegal gambling business," namely the underlying state law violation. On Leong does not challenge the government's proof of elements (ii) and (iii) of 18 U.S.C. § 1955(b)(1).

■ The government's burden in a civil forfeiture case is merely to establish probable cause to believe that the defendant property is subject to forfeiture. In this case, the government needed to show probable cause to believe that the Building housed an "illegal gambling business." Probable cause is defined as "reasonable ground for the belief of guilt supported by less than *prima facie* proof but more than mere suspicion." *United States v. Three Hundred Sixty Four Thousand, Nine Hundred Sixty Dollars etc.*, 661 F.2d 319, 322–323 (5th Cir.1981). Of course, proba-

ble cause must be demonstrated with respect to "every essential element" of the alleged violation. *United States v. Arias*, 575 F.2d 253, 254 (9th Cir.1978), certiorari denied, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179. Once the government demonstrates probable cause in a forfeiture case, the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture. 19 U.S.C. § 1615; *United States v. Edwards*, 885 F.2d 377 (7th Cir. 1989). Summary judgment ordering forfeiture is appropriate when the government establishes probable cause and the claimant fails to show that the facts constituting probable cause did not exist. *United States v. Little Al*, 712 F.2d 133 (5th Cir. 1983); *United States v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d 1093 (8th Cir.1989).

■ Claimant challenges the method by which the government established probable cause on the "state law violation" element of 18 U.S.C. § 1955(b)(1). Claimant interprets the statute to require the government to implicate the claimant in running an illegal business and to charge participants, at a minimum, with violations of state gambling laws. Under claimant's theory, the government failed to establish probable cause to believe that an "illegal gambling business" existed on the F.B.I. raid of April 20, 1988, because though On Leong members were present on those days and managed aspects of the gambling, no arrests were made. Similarly, the earlier Chicago police raids supposedly failed to uncover an "illegal gambling business" because no On Leong member was present at any of the first three searches, though

---

**2.** In its entirety, 18 U.S.C. § 1955(d) provides that

Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall

apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

gamblers were arrested at those searches for violating state laws.

On Leong's argument is overly formalistic. First the presence or involvement of the claimant is simply immaterial under the statute. The language of 18 U.S.C. § 1955(d) does not condition forfeiture on any suggestion that the claimant itself directed or managed the illegal gambling operation. It authorizes the forfeiture of "any property ... *used in violation* of the provisions of this section." 18 U.S.C. § 1955(d) (emphasis added). Though one of the preceding subsections does make it illegal to "conduct, finance, supervise, direct, or own all or part of an illegal gambling business," 18 U.S.C. § 1955(a), the forfeiture subsection is not limited in application to property owned by those who themselves conduct or oversee illegal gambling businesses.

By arguing that it must be linked to the state law crime, On Leong in essence claims that innocent ownership precludes forfeiture. This argument "has almost uniformly been rejected as a defense" in the context of civil *in rem* forfeiture actions.[3] *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 683, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452 (1974) (seizure of yacht justified after one marijuana cigarette discovered on board though owner/lessor was wholly innocent). "Traditionally, forfeiture actions have proceeded upon the fiction that inanimate objects themselves can be guilty of wrongdoing." *United States v. U.S. Coin and Currency*, 401 U.S. 715, 719, 91 S.Ct. 1041, 1044, 28 L.Ed.2d 434 (1971). This is reflected in the fact that the object itself is the formal defendant. Because the object is the wrongdoer, forfeiture can be ordered even in the absence of any wrongdoing on claimant's part. Though the result for the innocent claimant is harsh, the hope is that the spectre of forfeiture will provide owners of property with an incentive to monitor the uses of their property. See *Calero–Toledo*, 416 U.S. at 687–688, 94 S.Ct. at 2094.

On Leong also cannot assume that arrests, at a minimum, are necessary to prove that violations of state law occurred. The relevant burden of proof requires merely that the government establish probable cause to believe that state gambling laws were being violated. The means by which the government can do this are not limited to evidence of arrests. In this case, records of arrests were clearly relevant since the arrests were made pursuant to search warrants necessarily issued on a finding of probable cause. However, this does not mean that the government could only have shown probable cause to believe that the Building housed an illegal gambling business by introducing evidence of arrests. Any facts or evidence which might tend to establish "reasonable grounds for belief" of illegal activity are pertinent to the probable cause showing and can be presented to the district court.[4]

---

**3.** There are some extremely limited circumstances in which an innocent owner might have a valid defense to forfeiture. The Supreme Court has written in now-famous dicta that Fifth Amendment just compensation concerns might preclude a judge from ordering forfeiture if the owner proves "he was uninvolved and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974). Cases cited by the claimant speculate on the breadth of this *Calero–Toledo* exception. See *United States v. Various Denominations of Currency and Coin Totaling $4,280.45*, 628 F.Supp. 4 (S.D.W.Va.1984); *United States v. Bonanno Organized Crime Family*, 683 F.Supp. 1411 (E.D.N.Y.1988). Claimant does not raise any Fifth Amendment objection to the forfeiture, however, nor does it argue that it qualifies as an "innocent owner" under *Calero–Toledo*.

**4.** Claimant also argues that the district court should have required more than evidence of arrests to establish that violations of state law occurred. Claimant would require the government to produce evidence of the disposition of state criminal charges. Again, claimant tries to heighten the relevant burden of proof. Forfeiture under Section 1955(d) is not predicated on criminal convictions, but on a finding of probable cause. In this case, records of arrests were relevant to the probable cause inquiry because all arrests were made pursuant to warrants issued on a finding of probable cause. Whether those arrested ultimately were brought to trial or convicted is less material. Even if charges against all those arrested were dropped, this would not necessarily undermine or preclude a finding of probable cause to seize the Building.

It is pointless to try to distinguish the first three instances of gambling from the last on the basis of whether arrests were made. On Leong argues that since no arrests were made during the F.B.I. raid, no state laws were violated then. Yet the same gambling game was being played on all occasions. Claimant cannot successfully argue that Fan–Tan is illegal if someone happens to get arrested but legal if undetected. If gamblers were arrested for violations of Illinois law on three occasions, it is reasonable to conclude that a violation of state law occurred later when the same conduct was observed.

The affidavits presented to the district court contained ample evidence of gambling activity to support a probable cause finding. Claimant's quibbles over the proper means of establishing a state law violation are meritless. They do not amount to a refutation of the facts constituting probable cause. Claimant never denies the observations made by Agents Ng and Whitmer, nor does it try to argue that the gambling which occurred on the premises was legal under Illinois law. The government sustained its burden of demonstrating the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983), certiorari denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The district court properly found that probable cause existed to believe that the Building was being used in violation of state gambling laws,[5] and thus in violation of 18 U.S.C. § 1955.

**B. Denial of Claimant's Motion for Continuance**

■ Claimant next argues that the district court improperly denied its motion for a continuance of the forfeiture proceeding as it applied to the Building. On Leong originally moved under Rule 56(f) of the Federal Rules of Civil Procedure for a continuance of the summary judgment proceedings with respect to both the personal and real property seized by the government. It claimed that the pendency of the related criminal investigation made it impossible to obtain evidence with which to oppose the government's motion. The stay of discovery entered upon the filing of the complaint prevented On Leong from deposing Agents Ng and Whitmer. Those whom On Leong wished to depose purportedly feared risk of criminal prosecution. The district court denied claimant's motion as it applied to the Building after the parties agreed to a stay of forfeiture proceedings with respect to the contents of the Building.

On Leong claims that by deposing Agents Ng and Whitmer, it would have been able to cast doubt on the "basis, scope, and accuracy" of their statements. Amended Mem. in Support of Claimant's Rule 56(f) Motion at 5 n. 2. Claimant cryptically asserts that depositions, if allowed, "could reveal that [the agents'] observation of the activities in the On Leong building * * * was not as clear cut as the government would have the court believe." Appellant's Brief at 40. Apparently claimant hopes to cast doubt on the credibility of the F.B.I. agents by deposing them.

The district court's denial of a Rule 56(f) motion will not be disturbed absent an abuse of discretion. *United States v. Little Al*, 712 F.2d 133, 135 (5th Cir.1983). The district court did not abuse its discretion in denying claimant's motion for a continuance in this case. This Circuit held in *DF Activities Corp. v. Brown*, 851 F.2d 920 (1988), that "remote possibilities do not warrant subjecting the parties and the judiciary to proceedings almost certain to be futile." *Id.* at 922. Here, as in *DF Activities*, a party seeks to avoid the entry of an adverse judgment by raising the unlikely possibility that, upon further discovery, an adverse witness may contradict an earlier statement or volunteer an admission. Claimant never specified to the district

---

5. On Leong complains that the government never introduced the text of the relevant state statutes in district court. Providing the court with the citation to the relevant statute, however, is obviously sufficient. *See United States v. One (1) 1975 Thunderbird*, 576 F.2d 834, 836 (10th Cir.1978).

court, nor does it identify on appeal, any information it realistically hopes to gain by deposing these adverse witnesses. Moreover, it seems unlikely that the sworn testimony of Agents Ng and Whitmer could be shaken so badly as to rebut the probable cause showing. Their affidavits are replete with detail about the facts constituting probable cause and the basis for their conclusions.

> This Court has noted that
>
> Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to movant's affidavits ... *and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.*

*Korf v. Ball State University*, 726 F.2d 1222, 1230 (1984) (emphasis added), quoting *Willmar Poultry Co. v. Morton–Norwich Products, Inc.*, 520 F.2d 289, 297 (8th Cir. 1975), certiorari denied, 424 U.S. 915, 96 S.Ct. 1116, 47 L.Ed.2d 320 (1976). Here claimant failed to specify any information it could produce by deposing either adverse witnesses or witnesses under its control. Similarly claimant did not demonstrate that it would discover facts sufficient to rebut the government's showing of probable cause. Under these circumstances, the district court did not abuse its discretion in refusing claimant's Rule 56(f) motion.

On Leong renews its argument for postponement of summary judgment proceedings on appeal by raising a host of what it characterizes as "equitable" arguments. These arguments focus on the issue of whether forfeiture of the entire Building was appropriate and fair in this case. Because none of the claimant's arguments were presented to the district court, they cannot furnish a basis for reversing the forfeiture order and remanding the case. It is well established that this Court will not consider issues on appeal not presented to the district court. *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 642 (7th Cir. 1976). This maxim has been applied to equitable issues raised in forfeiture cases. *United States v. U.S. Currency in Amount of $103,387.27*, 863 F.2d 555, 558 n. 6 (7th Cir.1988).

Even if claimant's arguments had been properly raised in the district court, they would not support a remand because they are based on misunderstandings of the relevant law.

■ Claimant argues vehemently, for example, that the district court should on remand exercise its discretion to order a proportional, rather than a total, forfeiture. Claimant believes that the language of the statute, which directs that property "may" be seized, vests discretion in district courts to order proportional forfeiture.

This Court has never held that district courts can mitigate forfeitures at their own discretion. In fact, in *United States v. One 1958 Pontiac Coupe*, 298 F.2d 421 (7th Cir.1962), we held that the statute authorizing mitigation petitions, 19 U.S.C. § 1618, vests exclusive jurisdiction over remission or mitigation of forfeitures for violations of customs laws in the executive branch. That case involved a violation of the Internal Revenue Act, 26 U.S.C. § 7302. But like that statute, the illegal gambling statute at issue in this case, 18 U.S.C. § 1955(d), incorporates the customs laws to govern the forfeiture process.[6]

---

**6.** Claimant cites *United States v. Forty Eight Thousand, Five Hundred Ninety–Five Dollars*, 705 F.2d 909 (7th Cir.1983), for the proposition that a civil forfeiture statute with "may" language vests discretion in the district court. *U.S. v. $48,595*, which involved 31 U.S.C. § 1102(a), does not stand for this principle. Section 1102, now recodified as 31 U.S.C. § 5317(b), provides that monetary instruments totalling over $5,000 "are subject to seizure and forfeiture" if not reported to customs officials upon entering the country. In that case, the district court denied claimant's motion for relief from a default judgment on the ground that claimant had no meritorious defense. On appeal, this Court could not discern whether the district court "believed [claimant] unworthy of a favorable exercise of judicial discretion or whether he found the only discretion permitted under the statute to be that of the Secretary of the Treasury." *Id.* at 914.

■ Claimant contends, in the alternative, that the district court lacked the power to forfeit the entire Building. It argues that this would violate the Eighth Amendment prohibition on disproportionate punishment. But courts uniformly have held that the Eighth Amendment does not apply to civil *in rem* actions, since they are remedial in nature and not punishments for crimes. *United States v. One 107.9 Acre Parcel of Land Located in Warren Township*, 898 F.2d 396, 400–401 (3rd Cir.1990); *United States v. A Parcel of Land*, 884 F.2d 41, 43–45 (1st Cir.1989); *United States v. Santoro*, 866 F.2d 1538, 1543–1544 (4th Cir.1989); *United States v. Tax Lot 1500 Township 38 South, etc.*, 861 F.2d 232, 234–235 (9th Cir.1988), certiorari denied, *Jaffee v. United States*, ─── U.S. ───, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

■ Claimant's arguments about discretion and proportionality are different versions of the same complaint. At the core of On Leong's arguments is an assertion that it is unfair to seize an entire three-story building, especially one that is an historical landmark, on the basis of evidence of gambling confined to one area of the Building. Claimant's characterization of the gambling activity is not supported by the record, however. The gambling was not confined to any one small area in the Building. Law enforcement officials observed organized gambling games on two different floors of the Building, the second floor and the basement, on four separate occasions. At the last raid, on April 20, 1988, nearly one hundred people were present, suggesting that the Fan–Tan and Pai Gow games were set up in some sizeable room. The Building itself had been modified to harbor the gambling activity, as it was equipped with a camera and electronically-activated gates to monitor outsiders. These facts do not present a compelling picture of disproportionality.

Courts have previously held that entire buildings are subject to forfeiture under 18 U.S.C. § 1955(d). *United States v. Prem-*

*ises and Real Property at 614 Portland Avenue*, 846 F.2d 166 (2nd Cir.1988), affirming *per curiam* 670 F.Supp. 475 (W.D. N.Y.1987) (building and property not described); *United States v. The South Half of Lot 7 and Lot 8*, 910 F.2d 488 (8th Cir.1990) (forfeiture of 13 parcels of real estate, including buildings and residences); *U.S. v. Various Denominations of Currency*, 628 F.Supp. at 4 (forfeiture of Sportsman Tavern, a one-story masonry structure). The facts of this case establish that the gambling activity within the Building was not confined. Given the extent of the gambling activity, forfeiture of the entire Building was justified.

This case does not afford this Court an opportunity to decide the precise constitutional or statutory limits of permissible forfeiture under Section 1955(d). Some future case may present a compelling disproportionality claim. However, On Leong did not properly raise its "equitable" proportionality arguments, nor do the facts suggest that the district court ordered a forfeiture disproportionate to the illegal gambling activity. In these circumstances, claimant is not entitled to a reversal and a remand for further consideration of its proportionality arguments.

C. The Forfeiture of Real Property under Section 1955(d)

■ Finally, claimant argues that the Building cannot be forfeited because 18 U.S.C. § 1955(d), though it allows for the forfeiture of "any property," does not specifically provide for the forfeiture of real property. Claimant believes that the legislative history of the statute supports the conclusion that Congress intended only personal property to be forfeited under the statute. This Court has not previously considered the question of whether 18 U.S.C. § 1955(d) authorizes the forfeiture of real property.

The starting point in statutory interpretation is "the language of the statute itself." *Blue Chip Stamps v. Manor Drug*

---

Assuming that judicial discretion had been exercised for the sake of argument, it then continued its discussion. The Court did not endorse

the proposition that judges can grant proportional forfeitures when statutes direct that property "may be seized."

*Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975). Looking beyond the express language of a statute is unnecessary unless the statutory language is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme. See *United States v. Tex–Tow, Inc.,* 589 F.2d 1310, 1313 (7th Cir.1978).

The language of 18 U.S.C. § 1955(d) is unambiguous. "Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States." 18 U.S.C. § 1955(d). The ordinary meaning of the phrase "any property" encompasses real, as well as personal, property. Black's Law Dictionary 1095 (5th ed. 1979). This Court joins the Second and Eighth Circuits in holding that the forfeiture of real property is permitted under 18 U.S.C. § 1955(d). See *614 Portland Avenue,* 846 F.2d at 166; *United States v. The South Half of Lot 7 and Lot 8,* 910 F.2d at 488. Only two district courts, with which we disagree, have held that the forfeiture of land is inappropriate under the statute. See *United States v. Building and Property known as 123–125 East Twelfth St.,* 527 F.Supp. 1167 (W.D. Pa.1981); *Di Giacomo v. United States,* 346 F.Supp. 1009 (D.Del.1972).

The legislative history of 18 U.S.C. § 1955(d) furnishes no reason to depart from the plain meaning of the statutory language. Section 1955 was passed as part of a larger piece of legislation, the Organized Crime Control Act of 1970, Pub.L. 91–452. Congressional discussions specifically about the Section 1955(d) forfeiture provision are sparse. See *614 Portland Avenue,* 670 F.Supp. at 477–478; *The South Half of Lot 7 and Lot 8,* 910 F.2d at 490–491 (containing detailed examinations of the relevant legislative history). The Senate and House Reports both recommended the "any property" language for Section 1955(d) without comment. S.Rep. No. 617, 91st Cong., 1st Sess. (1969); H.R. Rep. No. 1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. Admin. News 4007. Floor debate on the forfeiture section also is limited and unenlightening.

One representative did note the inclusion of:

> a forfeiture provision which will permit any property used in illegal gambling, including money to be seized and subjected to judicial forfeiture procedures. This provision will be of tremendous assistance in closing down gambling establishments and keeping them out of business.

116 Cong.Rec.H. 32,295 (daily ed. Oct. 7, 1970) (statement of Rep. Poff). This comment provoked no further discussion.

Since the passage of the Organized Crime Control Act (OCCA), the forfeiture provisions of two closely-related statutes have been held to provide for the seizure of land and buildings, though, like Section 1955, neither originally specifically mentioned real property. The Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1961 *et seq.,* was passed as part of the OCCA, and provided for the forfeiture of "any ... property ... of any kind" belonging to those convicted of racketeering. 18 U.S.C. § 1963(a) (1982). The Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. § 848, enacted in the same year as the OCCA, used identical language to authorize the seizure of property used in drug-related continuing criminal enterprises. 21 U.S.C. § 848(a)(2) (1982). The original forfeiture provisions in both statutes, though neither made reference to real property, were interpreted to allow the forfeiture of real property. See *United States v. Godoy,* 678 F.2d 84 (9th Cir.1982), certiorari denied, 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983) (RICO); *United States v. Tunnell,* 667 F.2d 1182 (5th Cir.1982) (RICO); *United States v. Mannino,* 635 F.2d 110 (2d Cir.1980) (CCE); *United States v. Grammatikos,* 633 F.2d 1013 (2d Cir.1980) (CCE).

Claimant makes much of the fact that Congress amended the RICO and CCE statutes in 1984 to allow explicitly for the forfeiture of real property, in spite of the above-cited cases holding that such forfeitures were contemplated by the statute. Claimant reasons that Congress' failure to amend 18 U.S.C. § 1955(d) at the same time indicates its desire to exclude real property from that section's scope. This Court finds claimant's argument unpersuasive. Only

the "most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v. United States*, 469 U.S. 70, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984). In the absence of any direct evidence of Congressional intent, claimant's interpretation of Congress' actions in 1984 amounts to speculation. It would furnish only an infirm basis upon which to contradict clear statutory language.

Finally, the purpose of 18 U.S.C. § 1955(d) is best served by allowing the forfeiture of real estate as well as personal property. The Organized Crime Control Act was a comprehensive set of legislation which recognized that "organized crime derives a major portion of its power through money obtained from such illegal endeavors as syndicated gambling," S. 30, 91st Cong., 2d Sess. (1970), and thus sought to "strike[] at the economic roots of organized crime." 116 Cong.Rec.S 602 (1970). The Supreme Court has held that forfeiture statutes enacted

> to suppress a public wrong, ... although they impose penalties or forfeitures, [are] not to be construed, like penal laws generally, strictly in favor of the defendant, but ... are to be fairly and reasonably construed, so as to carry out the intention of the legislature.

*United States v. Stowell*, 133 U.S. 1, 12, 10 S.Ct. 244, 246, 33 L.Ed. 555 (1890). Allowing the forfeiture of buildings and land that house illegal gambling operations, as well as the equipment and currency that may be within, best advances the stated goal of the statute.

## III. CONCLUSION

This Court is mindful that the forfeiture remedy is harsh. In this case, however, the government met its burden of proving that there was no genuine issue of material fact. Moreover, forfeiture of the defendant real property is permitted under 18 U.S.C. § 1955(d). The district court's entry of summary judgment is therefore affirmed.

CUDAHY, Circuit Judge, concurring:

I concur in the judgment and in Judge Cummings' careful opinion. I write separately only to emphasize that the most difficult questions presented by this appeal need not be addressed because they have been waived. Under other circumstances, the government's constitutional arguments here might appear overly expansive. For example, at oral argument the government suggested that 18 U.S.C. § 1955 would authorize it to seize the King Ranch, a legendary Texas spread covering hundreds of square miles, were it to detect an illegal crap game in one stable. Such a broad construction of the statute—if seriously espoused—could raise significant constitutional questions.[1]

Civil forfeiture actions have traditionally proceeded upon the theory that property devoted to criminal activity may itself be found guilty of wrongdoing. *See United States v. U.S. Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). The Supreme Court has occasionally pierced this legal fiction, however, to recognize the quasi-criminal nature of *in rem* actions and accord them fourth and fifth amendment protections generally reserved for criminal proceedings. *E.g., id.* at 718, 91 S.Ct. at 1043 (acknowledging that " 'proceedings instituted for the purpose of declaring the forfeiture of a man's property *by reason of offences* [sic] *committed by him*, though they may be civil in form, are in their nature criminal' for Fifth Amendment purposes") (quoting *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886) (emphasis supplied in *Coin & Currency* )); *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1964); *Boyd v. United*

---

**1.** Although the case before us does not afford the opportunity to determine the precise parameters of permissible forfeiture under section 1955, it is certainly not clear that the statutory reach is virtually unlimited. The government relies upon the body of law construing the drug forfeiture statute, 21 U.S.C. § 881, to support its expansive reading of section 1955. Unlike section 1955, however, section 881 specifically authorizes forfeiture of an entire tract of land regardless of the magnitude of the infraction. *See* 21 U.S.C. § 881(a)(7) (1990) (authorizing forfeiture of "[a]ll real property, including any right, title, and interest ... in the whole of any lot or tract of land ... used, or intended to be used, in any manner or part, to commit" a violation).

*States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). The Constitution may not be implicated when the government merely confiscates property directly tied to a crime, such as a gun or a car. But I agree with the Second Circuit that "[a]t some point, it seems that a forfeiture would cross the line of condemning an instrumentality of crime and move into the area of punishing a defendant by depriving him of his estate." *United States v. Property at 4492 S. Livonia Road*, 889 F.2d 1258, 1270 (2d Cir.1989). In this regard, the Supreme Court has in recent years eschewed the rigid labels of "civil" or "criminal" when examining significant constitutional interests. *See United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989) ("the labels 'criminal' and 'civil' are not of paramount importance ... [for] [i]t is commonly understood that civil proceedings may advance punitive as well as remedial goals"). The Court has instead attempted to plumb the underlying nature of the proceeding and evaluate the purposes actually served by the sanction to determine whether it constitutes criminal punishment for the purpose, for example, of double jeopardy clause analysis. *See id.*, 109 S.Ct. at 1901–1902 (holding that a civil sanction constitutes "punishment" when it furthers the dual goals of punishment—retribution and deterrence).

When the government exacts a forfeiture grossly disproportionate to the offense, eighth amendment analysis may be applicable even to a nominally civil proceeding. *See United States v. Real Estate Known as 916 Douglas Ave.*, 903 F.2d 490, 495 (7th Cir.1990) (Flaum, J., concurring) (observing that "there might be situations where the application of the broadly-written [drug forfeiture] provision would raise eighth amendment concerns"); *United States v. Property at 4492 S. Livonia Road*, 889 F.2d 1258, 1270 (2d Cir.1989) (same); *United States v. Premises Known as 3639–2nd St.*, 869 F.2d 1093, 1098 (8th Cir.1989) (Arnold, J., concurring) (noting that "one can imagine applications of the forfeiture statutes that would be so draconian as to violate the Excessive Fines Clause"). *Cf. Browning–Ferris Indus. v. Kelco Dispos-*

*al, Inc.*, —— U.S. ——, 109 S.Ct. 2909, 2920, 106 L.Ed.2d 219 (1989) (suggesting that the eighth amendment's excessive fines clause may apply to civil actions by the government to extract exorbitant forfeitures). It would defy common sense to prohibit disproportionate forfeiture of the property of a defendant who has been convicted of a criminal violation, *see, e.g., United States v. Busher*, 817 F.2d 1409 (9th Cir.1987) (finding the eighth amendment applicable to criminal forfeiture proceedings), while placing no limits on the power of government to seize any real estate related to an offense in an ostensibly civil *in rem* action.

Seizure of the On Leong building may not be disproportionate to the gambling offense here. It is, however, a three-story landmark structure with an unusual cultural history and substantial economic value. A forfeiture of this genre and magnitude may be authorized and appropriate, but it seems to me to mark a significant departure in the enforcement of 18 U.S.C. § 1955.