**Larry SIMS, Plaintiff,**

v.

**Jack KEMP, et al., Defendants.**

**Civ. A. No. 91 C 0720.**

United States District Court,
N.D. Illinois, E.D.

July 11, 1991.

As Amended Oct. 8 and Dec. 6, 1991.

Linda A. Rothnagel, Susan Skarecky, Gerald Brask, Prairie State Legal Services, Inc., Waukegan, Ill., for plaintiff.

Madeleine Murphy, Asst. U.S. Atty., Chicago, Ill., Robert Masini, Diver, Bollman, Grach & Quade, Waukegan, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Larry Sims brought this action against Jack Kemp, the Secretary of the United States Department of Housing and Urban Development ("HUD"), Lake County Housing Authority (the "Authority")[1], and Alon Jeffrey, the Executive Director of the Authority ("defendants") claiming that defendants' termination of Sims' tenancy in Conventional Low–Income Public Housing without the opportunity to request a grievance hearing violated his due process rights and his rights under the United States Housing Act of 1937 (the "Housing Act") and the regulations promulgated thereunder.

### FACTS

The undisputed facts are as follows: Plaintiff Sims is a tenant in and beneficiary of Conventional Low–Income Public Housing administered by defendant Authority. HUD is responsible for the operation and administration of the Conventional Low–Income Public Housing Program.

In March 1990 Sims plead guilty to making false statements to the federal government by failing to properly report his income to the Authority. Sims was sentenced to serve five years probation and ordered to make restitution.

On June 25, 1990, the Authority issued a "30–Day Notice to Quit" to terminate Sims' lease with the Authority. On July 2, 1990, HUD issued a Limited Denial of Participation ("LDP") against Sims denying his participation for a twelve month period in all HUD housing programs within the jurisdiction of the Chicago region. Sims did not receive the LDP since it was addressed incorrectly. However, the Authority received the LDP on July 9, 1990. On August 6, 1990, the Authority filed an action in the Illinois Circuit Court in forcible entry and detainer based upon the June 25th Notice to Quit. The Authority voluntarily dismissed the action against Sims on November 21, 1990, one week after Sims filed a motion for summary judgment in the eviction action.

On December 7, 1990 HUD "reissued" the July 2nd LDP denying Sims' participation for a twelve month period in all HUD housing programs within the jurisdiction of the Chicago region. The LDP stated

The specific reason for the imposition of this official sanction by the Chicago Regional Office is:

You were charged by the U.S. Attorney with having submitted false statements to the Government.

After a guilty plea, you were sentenced to five (5) years probation, and ordered to make restitution totaling $15,370.00.

Sims did not receive the December 7th LDP until the first week of January, 1991. The LDP was effective from the date of its issuance—December 7, 1990—and stated that Sims was entitled to a conference if he made a written request within thirty days of receipt of the LDP. On January 4, 1991, the Authority issued a 30–Day Notice to Quit terminating Sims' lease. A letter dated January 9, 1991 requested a conference with HUD concerning the LDP. A conference was scheduled for February 8, 1991. Counsel for the Authority informed Sims that it intended to file a state court action against Sims in forcible entry and detainer on or anytime after February 6, 1991 de-

---

1. The Authority is a local public housing authority, often referred to as a "PHA".

spite the fact that the LDP conference was not scheduled until February 8.

On February 4, 1991, Sims filed this action and withdrew his request for a conference pending resolution of this suit. Before the court is Sims' motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## DISCUSSION

Sims argues that the use of an LDP to terminate the lease and evict a public housing tenant violates the United States Constitution, the Housing Act, and the regulations promulgated under the Housing Act. Since the statutory and regulatory issues presented here are sufficient for resolving the controversy at hand, the court need not address the constitutional question. *See U.S. v. Marshall*, 908 F.2d 1312, 1318 (7th Cir.1990) (concerning preference for avoiding constitutional adjudication).

## I. THE LIMITED DENIAL OF PARTICIPATION

### A. LDP'S APPLICATION TO PUBLIC HOUSING TENANTS

Sims contends that the LDP sanction does not apply to public housing tenants. A determination of this issue must begin with the language of the regulation itself. *U.S. v. On Leong Chinese Merchants Ass'n Building*, 918 F.2d 1289, 1297 (7th Cir.1990).

The LDP is provided for in 24 C.F.R. Part 24 entitled "Government Debarment and Suspension and Governmentwide Requirements for Drug–Free Workplace (Grants)." An LDP is an action taken to immediately exclude from participation, or to immediately impose conditions on the participation, of any person in a program or programs of HUD within a limited geographical region. 24 C.F.R. § 24.105(aa). An LDP may be imposed if "adequate evidence" exists that any one of numerous situations have occurred. 24 C.F.R. § 24.705. These situations include "[i]rregularities in a participant's or contractor's past

performance in a HUD program" and "[f]ailure to honor contractual obligations or to proceed in accordance with contract specifications or HUD regulations."[2] 24 C.F.R. § 24.705(a)(2), (4).

An LDP extends generally only to participation in the program under which the cause of action arose. 24 C.F.R. § 24.710(a)(1). The sanction is "effective immediately upon issuance" and remains effective up to twelve months thereafter. 24 C.F.R. § 24.710(b).

An LDP can be used against a "participant or contractor." 24 C.F.R. § 24.700. A participant is defined as "[a]ny person who ... enters into ... a covered transaction." 24 C.F.R. § 24.100(m). Participation for purposes of LDPs includes the "receipt of any benefit or financial assistance through grants or contractual arrangements." 24 C.F.R. § 24.710(a)(2). Covered transactions include "grants, cooperative agreements, scholarships, fellowships, contacts of assistance, loans, loan guarantees, subsidies, ... and any other nonprocurement transactions between a Federal agency and a person." 24 C.F.R. § 24.110(a)(1)(i). The parties agree that Title 24 covers "ultimate beneficiaries" of HUD programs. The regulations define ultimate beneficiaries to include "subsidized tenants." 24 C.F.R. § 24.105(cc).

▬▬ The court finds that the plain language of the LDP regulations reveals that an LDP may apply to public housing tenants such as Sims. Sims is the ultimate beneficiary of a HUD program who receives financial assistance in the form of subsidies from a federal agency. Sims correctly points out that "statutory entitlements" and "benefits to an individual as a personal entitlement" are excepted from coverage under Title 24. 24 C.F.R. § 24.110(a)(2). However, the language of the regulations cited above describes the transactional relationship between Sims and HUD with much greater specificity than the general description of statutory or personal entitlements. Thus, the court con-

---

**2.** These are the two bases cited by HUD in the LDP sent to Sims. (Pl.'s Statement of Material Facts, Ex. F.)

cludes that the plain language of the LDP regulations allows the use of such sanction against public housing tenants such as Sims.

### B. LDP PROCESS

As stated in the LDP regulations and reflected in the LDP notice sent to Sims, a participant who receives an LDP is entitled to notice, a conference (if requested within thirty days of receipt of the notice), and an appeal (if requested within thirty days of notice of affirmance of decision). 24 C.F.R. §§ 24.711–24.713.

The conference must occur within ten business days of the receipt of the request and is between the participant and the official who imposed the sanction. 24 C.F.R. § 24.712. The participant may be represented by counsel and may present all relevant information and materials to the official. *Id.* After consideration of the information presented, the official must advise the participant in writing of the decision. *Id.* If the decision is to affirm the LDP, the participant must be advised of the right to request a formal hearing. *Id.*

The appeal is a formal hearing held in accordance with the procedures used in debarment actions. 24 C.F.R. § 24.713. The procedures are significantly limited "[w]here the action is based solely upon an indictment or conviction."[3] 24 C.F.R. § 24.313(b)(2)(ii). In such cases, "the hearing shall be limited to the opportunity to submit documentary evidence and written briefs for consideration by a hearing officer." *Id.* Furthermore, if the action is based upon an indictment, the standard of proof "shall be deemed to have been met." 24 C.F.R. § 24.313(b)(3). After the participant has been afforded an opportunity to be heard, the hearing officer makes a written determination on the evidence presented. 24 C.F.R. 24.314(a). Generally this decision is final. 24 C.F.R. § 24.314(c).

## II. THE UNITED STATES HOUSING ACT

### A. APPLICABILITY OF THE HOUSING ACT

The Housing Act and its accompanying regulations require the use of an administrative grievance procedure. *See* 42 U.S.C. § 1437d(k). This section unequivocally mandates that HUD "shall ... require each public housing agency [PHA] receiving assistance under this chapter to establish and implement an administrative grievance procedure." The HUD regulations promulgated pursuant to the Housing Act provide that an administrative grievance procedure must be made available to a public housing tenant

> [i]f the tenant disputes within a reasonable time *any* PHA action or failure to act involving the tenant's lease with the PHA or PHA regulations which adversely affect the tenant's rights, duties, welfare or status.

24 C.F.R. §§ 966.50, 966.53(a) (emphasis added). As the D.C. Circuit explained

> [Section 1437d(k)] uniformly speaks of a tenant's *entitlement* to particular procedural protections in the face of adverse PHA action, *see id.* § 1437d(k)(4)–(6). (footnote omitted) HUD's regulations are equally mandatory and specific. *See* 24 C.F.R. §§ 966.50–966.59 (1984). The legislative history of this provision also confirms Congress' clear intent to require local PHAs to provide an administrative grievance procedure for public housing tenants.

*Samuels v. District of Columbia,* 770 F.2d 184, 197 (D.C.Cir.1985) (emphasis in original).

■ The regulations plainly require an administrative grievance procedure for the denial of participation issued to Sims because such sanction, regardless of its "limited" duration, is clearly a PHA action involving a tenant's lease or PHA regulations which adversely affect the tenant's

---

**3.** The definition of conviction includes a guilty plea, which was plead by Sims in the false statement case. *See* 24 C.F.R. § 24.105(e).

rights, welfare, or status. *See* 24 C.F.R. §§ 966.50, 966.53(a).

## B.  HOUSING ACT PROCESS

Since the Housing Act and its accompanying regulations apply here, it must now be determined whether the process afforded a tenant under an LDP comports with the process required by the Housing Act and its regulations. Sims contends that the LDP regulations fail to provide the process protections set forth for public housing tenants in the Housing Act. Specifically, Sims asserts that the LDP does not provide for a pre-termination hearing, termination only for serious or repeated lease violations or other good cause, proof by a preponderance of the evidence, the rights to review evidence and to confront and cross-examine witnesses, and the right to raise equitable and legal defenses.

The grievance procedure provided for under the Housing Act and its regulations is to take place prior to initiating an eviction action in state court. *King v. Housing Authority of Huntsville*, 670 F.2d 952, 954–55 (11th Cir.1982). The grievance procedure commences with an informal settlement discussion. 24 C.F.R. § 966.54. Within a reasonable time thereafter, the tenant may then submit a written request for a formal hearing. 24 C.F.R. § 966.-55(a). The procedures governing the hearing include

> (1) the opportunity to examine before the hearing all documents, records, and regulations of the PHA that are relevant to the hearing;
>
> (2) the right to be represented by counsel or other representative;
>
> (3) the right to present evidence and arguments in support of his or her complaint, to controvert evidence relied on by the PHA, and to confront and cross-examine all witnesses relied upon by the PHA; and
>
> (4) a decision based solely and exclusively upon the facts presented at the hearing.

42 U.S.C. § 1437d(k); 24 C.F.R. § 966.56. The PHA may not terminate a tenancy except for "serious or repeated violation of the terms or conditions of the lease or for other good cause." 42 U.S.C. § 1437d(*l*). The LDP does not provide for a hearing with all the elements of process afforded in the grievance procedure prior to the implementation of the proposed adverse PHA action. As stated above, the denial of participation is effective immediately. The informal LDP conference allows the participant nothing more than an opportunity to be heard. The LDP appeals hearing for a tenant such as Sims who has been indicted or convicted of a criminal offense is limited to submitting documentary evidence and written briefs. Furthermore, no matter what standard of proof exists in a grievance procedure, the standard of proof in an LDP proceeding is deemed to have been met if the LDP is based upon an indictment. Finally, the rights to review evidence and to confront and cross-examine witnesses are not expressly available in the LDP regulations.

■  To the extent possible, the LDP regulations should be construed *in para materia* with the Housing Act and its regulations in order to avoid contravening either scheme. Accordingly, the court believes that use of the LDP sanction against a public housing tenant does not obviate adherence to the grievance procedure required by the Housing Act. Instead, the Housing Act requires procedures that go beyond those required by the LDP regulations. Use of the LDP sanction against public housing tenants without affording them the process set out in the Housing Act and its regulations would allow the Authority to make an end-run around the clear intent of Congress. Defendants have failed to provide Sims with the administrative grievance procedure required by the Housing Act and its regulations.

## C.  THE CRANSTON–GONZALES ACT

■  Defendants rely on a provision in the Housing Act which, prior to amendment, allowed the PHA to bypass the administrative grievance procedure in evicting tenants pursuant to a HUD waiver indicating that local court eviction procedures provide adequate elements of due

process. The Cranston–Gonzales National Affordable Housing Act (the "Cranston Act"), enacted November 28, 1990, amended the exclusion provision so as to only allow exclusions from grievance procedures for "any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises ... or any drug-related criminal activity on or near such premises." 42 U.S.C. § 1437d(k).

The parties agree that Sims' criminal offense does not fall within the amended exclusion provision and that the Authority may have been able to deny Sims a grievance procedure if the notice to quit had been issued prior to the amendment. However, the parties disagree whether the amendment was effective at the time Sims received the notice to quit.

Section 503(d) of the Cranston Act provides

APPLICABILITY—Any exclusion of grievances by a public housing agency pursuant to a determination or waiver by the Secretary (under section 6(k) of the United States Housing Act of 1937, as such section existed before the date of the enactment of this Act) that a jurisdiction requires a hearing in court providing the basis elements of due process shall be effective after the date of the enactment of this Act only to the extent that the exclusion complies with the amendments made by this section, except that any such waiver provided before the date of the enactment of this Act shall remain in effect until the earlier of the effective date of the final rules implementing the amendments made by this section or 180 days after the date of the enactment.

Defendants contend that "[s]ince no final rules have been implemented, and since 180 days from the date of the amendment have not elapsed, plaintiff was not entitled to an administrative grievance concerning the January 4, 1991 notice to quit." (Response, p. 12.)

The court disagrees with defendants' interpretation of the "Applicability" section. The provision clearly states that an *exclusion* will be effective after November 28, 1990 only to the extent that it complies with the amendment. The portion of section 503(d) that defendants rely upon states that any *waiver* by the Secretary will be effective until the final rules become effective or 180 days after November 28, 1990. "Waivers" are a determination by HUD that the state provides the basic elements of due process in state court eviction actions. "Exclusions", on the other hand, are specific PHA actions which deny grievance procedures to tenants in certain situations pursuant to a HUD waiver.

While HUD's determination that state court procedures provide adequate due process to tenants is effective past the effective date of the Cranston Act, the use of exclusions against particular tenants is subject to the amendment as of the effective date of the Cranston Act. Since Sims' notice to quit was dated January 4, 1991, and the effective date of the Cranston Act was November 30, 1990, Sims' grievance was governed by the amended exclusion provision. It is undisputed that Sims' criminal offense does not fall within the amended provision. Thus, Sims is entitled to the grievance procedures set out in the Housing Act and its regulations.

### CONCLUSION

For the reasons stated above, plaintiff Larry Sims' motion for summary judgment is GRANTED. The court orders that defendants not take any action concerning Sims with regard to eviction or termination of tenancy without first affording him the administrative grievance procedure set forth in 42 U.S.C. § 1437 and its accompanying regulations.

### AMENDING ORDER

#### 91 C 720

Plaintiff Larry Sims has moved for amendment of judgment of the court's Memorandum Opinion and Order of July 11, 1991 (the "Opinion and Order") so that the Opinion and Order declares void the Limited Denials of Participation of July 2, 1990 and December 7, 1990 (the "1990 LDPs") and orders that HUD not issue any other LDP against Sims without providing

Sims the procedures required by the United States Housing Act (the "Housing Act"). For the reasons discussed below, the motion to amend judgment is GRANTED.

Sims argues that the Opinion and Order, as it currently stands, does not prevent reliance upon the 1990 LDPs as a basis for eviction during Housing Authority grievance procedures or a subsequent state court eviction action. (Plaintiff's Mem. in Support, pp. 2–3.) Instead, Sims contends that the procedural requirements of the Housing Act must be provided at the time of the issuance of an LDP to a public housing tenant. (*Id.* at 2.) Thus, the 1990 LDPs, issued without the required process, must be voided so that they cannot be considered as a basis for evicting Sims. (*Id.* at 3.)

In its Opinion and Order, the court held that the issuance of an LDP itself is a PHA action involving a tenant's lease which adversely affects the tenant's rights, duties, welfare or status. (Opinion and Order, p. 8.) Thus, the Housing Act requires an administrative grievance procedure before the issuance of such sanction. (*Id.*) The court then determined that the procedures afforded by the LDP regulations when used against public housing tenants do not satisfy the procedures required by the Housing Act for adverse PHA actions. (*Id.* at 10.) Therefore, in the context of public housing tenancies, the issuance of an LDP requires compliance with the procedures set forth by the Housing Act.

For the reasons stated above and in the court's Order and Opinion of July 11, 1991, plaintiff Sims' motion to amend judgment is GRANTED. The court declares that the LDPs issued July 2, 1990 and December 7, 1990 against plaintiff Sims are invalid. The Housing Authority may not seek to evict Sims based upon the LDPs issued July 2, 1990 and December 7, 1990. An LDP may not be relied upon for the basis of eviction unless the issuance of that LDP comports with the procedural mandates of the Housing Act. This order does not bar the Housing Authority's right to evict Sims on grounds other than the LDPs issued July 2, 1990 and December 7, 1990.

## SECOND AMENDING ORDER

### 91 C 720

Defendant Kemp has moved for relief from judgment from the court's October 8, 1991 order. Kemp requests that the court amend the October 8, 1991 order "to state that the LDP issued by HUD on December 7, 1990 (the "December 7 LDP") is valid as it affects plaintiff's future participation in HUD programs." (Motion, p. 2.) The motion is granted.

The court agrees with Sims that the term "future participation" as used by Kemp is an uncertain one. The court relies upon Kemp's representation that preventing "future participation" does not refer to terminating existing arrangements or tenancies. Thus, defendants concede and the court holds that "the [December 7] LDP is invalid for the purpose of an eviction: plaintiff's tenancy is clearly *not* in any jeopardy as a result of the LDP." (Reply, p. 4.) The December 7 LDP remains invalid as a basis for or for the purpose of evicting a PHA tenant, including Sims.

However, the December 7 LDP can be used to bar Sims from participating in HUD programs outside of his current tenancy. The administrative grievance procedures of the United States Housing Act only apply to public housing tenants facing adverse PHA action. *See* 24 C.F.R. §§ 966.50, 966.53(a). Thus, the Housing Act does not require such grievance procedures when the LDP sanction is being issued against a *non-tenant.* Accordingly, the December 7 LDP is not invalid insofar as it affects Sims' "future participation," in his capacity as a non-tenant, in HUD programs.

For these reasons, defendant Kemp's motion for relief from judgment is GRANTED. The court amends its order of October 8, 1991 to state that the LDP issued by HUD on December 7, 1990 remains valid insofar as it affects plaintiff Sims' "future participation" in HUD programs as defined above. Defendants may not seek to evict Sims based on the December 7 LDP.