822

UNITED STATES of America, Appellee,

v.

PREMISES KNOWN AS 318 SOUTH THIRD STREET, MINNEAPOLIS, MINNESOTA, HENNEPIN COUNTY, with all appurtenances thereto and any and all proceeds from its sale or transfer, Appellant.

On Leong Chinese Merchants Association, Claimant/Appellant,

Cassius Enterprises, Inc.; McCready's Pub, Claimants.

No. 92–1957.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1992.

Decided March 8, 1993.

Paul E. Mattke, Anoka, MN, argued, for appellant.

Mary J. Madigan, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

This is the appeal of an in rem forfeiture under 18 U.S.C. § 1955, which authorizes forfeiture of property used in any gambling operation. The Minneapolis On Leong Chinese Merchants Association, ("Association"), the real party in interest, raises numerous contentions challenging the validity of the forfeiture proceedings. We affirm.

## I. BACKGROUND

On August 29, 1990, the government brought a civil forfeiture action against the real property known as 318 South Third Street, Minneapolis, Minnesota, ("real property"), pursuant to 18 U.S.C. § 1955(d).[1] The real property consisted of a two-story building and a parking lot jointly identified as the northwesterly 22 feet of the southwesterly 85 feet of Lot 4 and the northeasterly 70 feet of Lots 4 and 5, Block 49, Town of Minneapolis. The Association was the fee owner of this real property. At the time of the seizure, the second floor of the building served as headquarters for the Association, and the first floor was leased to a third party not involved in this suit.

The government alleged that between 1984 and 1988 the real property was used to house an illegal gambling business.[2] This allegation was based on information discovered during an FBI investigation of gambling at the property. The FBI investigation consisted of interviews with members of the Association, as well as an examination of local police department records. The local police records consisted largely of reports generated during the 1984 investigation of the murder of Hugh Wong, an Association member, and contained information about a 1984 gambling operation run by Jimmy Liu and Kevin Tam at the building. Liu and Tam paid the Association $400.00 per month rent for the use of the second floor.

The evidence revealed that gambling occurred at the real property during two other time periods. In 1985 or 1986, Carl Wong and Tom Kong, both Association members, started a gambling operation. Wong and Kong paid the Association $100 per week rent for the second floor. From late 1987 through spring of 1988, Man Wu ran a gambling operation at the real property, under a similar rental arrangement. Before the district court, and on appeal, the

1. 18 U.S.C. § 1955(d) states in relevant part:
(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States.

2. 18 U.S.C. § 1955(b) defines illegal gambling business as:
(b) As used in this section—
(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;
(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

Association did not contest that illegal gambling occurred at the real property but argued that this gambling did not rise to the level of a "gambling business" as defined in the statute. All parties agree that gambling at the real property ceased in April 1988, after an FBI raid on the On Leong Chinese Merchants Association building in Chicago.

On August 29, 1990, the United States Marshal seized the real property for forfeiture. On October 14, 1991, the building was destroyed by fire. After discovery, both the Association and the government moved for summary judgment. On February 28, 1992, the district court granted the government's motion for summary judgment, and ordered the forfeiture of the real property. The Association appeals that order.

## II. DISCUSSION

The Association raises numerous arguments for reversal. They contend that real property is not forfeitable under 18 U.S.C. § 1955; that there were material facts in dispute and therefore summary judgment was inappropriate; that proof of probable cause for forfeiture was not adequate; and that considerations of proportionality and constitutional limitations should prevent a forfeiture in this case.

### A. Forfeiture of Real Property

■ In this Circuit, it is well settled that real property is subject to forfeiture under 18 U.S.C. § 1955. In 1990, sitting en banc, we reviewed precisely this question. See *United States v. South Half of Lot 7 and Lot 8, Block 14*, 910 F.2d 488 (8th Cir.1990) (en banc), *cert. denied,* — U.S. ——, 111 S.Ct. 1389, 113 L.Ed.2d 445 (1991). The court concluded:

The tasks of resolving the dispute over the scope of section 1955(d)'s forfeiture provision begins with the language of the statute itself. When used without qualification, the word "property" in-

cludes both real and personal property within its sweep. Indeed, Congress's use of the word "any" to describe property undercuts a narrower construction. The language of the forfeiture provision is plain and clear: real property used in illegal gambling operations may be seized and forfeited.

*Id.* at 489 (citations omitted); *accord, United States v. On Leong Chinese Merchant's Ass'n Bldg.*, 918 F.2d 1289, 1297 (7th Cir. 1990), *cert. denied,* — U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991); *United States v. Premises and Real Property at 614 Portland Ave.*, 846 F.2d 166, 167 (2d Cir.1988) (per curium). We are bound by this decision and the Association's suggestion that a panel of the court might overrule an en banc holding is simply incorrect.

### B. Summary Judgment

When reviewing a district court's grant of summary judgment, we apply the same standard as the district court and view the evidence in the light most favorable to the party against whom judgment was granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). We must construe the facts so as to give the non-moving party the benefit of all reasonable inferences. *United States v. One Parcel of Property Located at 508 Depot Street*, 964 F.2d 814, 816 (8th Cir.1992), *cert. granted,* — U.S. ——, 113 S.Ct. 1036, 122 L.Ed.2d 347 (1993).[3] Summary judgment is appropriate only if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Id.*

■ In the context of a civil forfeiture proceeding, the government carries the initial burden of establishing probable cause. This burden of proof is greater than mere suspicion, but less than prima facie proof. *United States v. Premises Known as 3639–2nd St., N.E.*, 869 F.2d 1093, 1095

---

**3.** Since our decision in the present case is based on entirely different grounds than those relied upon in *United States v. One Parcel of Property Located at 508 Depot Street,* we note the grant of

certiorari solely for the sake of completeness. Regardless of the decision the Supreme Court renders in that case, our conclusions in this case will presumably remain the same.

(8th Cir.1989). Once the government meets this threshold, the burden shifts to the party opposing forfeiture to prove by a preponderance of the evidence that the property is not subject to forfeiture. *Id.* If unrebutted, a showing of probable cause alone will support a forfeiture. *508 Depot Street,* 964 F.2d at 816.

### 1. Probable Cause

■ In the present case, the government met its initial burden. The uncontroverted documentary ·and testamentary evidence shows that five or more persons were involved in the gambling operation at the real property, Joint Appendix Vol. I at 344; that this gambling enterprise was in substantially continuous operation for a period in excess of thirty days, Joint Appendix Vol I at 290–95; and that it received gross revenues in excess of $2000 in any single day.[4] In short, the Liu–Tam gambling operation satisfied all prongs of the 18 U.S.C. § 1955(b) definition of an "illegal gambling business."[5] The government therefore met its burden of proving probable cause for forfeiture.

■ In order to avoid summary judgment, the Association had the burden of rebutting this evidence and of showing, by a preponderance of the evidence, that the real property was not subject to forfeiture. The Association contends that summary judgment was inappropriately granted to the government because a genuine factual dispute existed as to whether an "illegal gambling business" existed at the real property. The Association predicates this "genuine dispute of material fact" argument upon its contention that the statute of limitations provision, 19 U.S.C. § 1621,[6] bars consideration of the 1984 Liu–Tam gambling operation for purposes of determining whether an "illegal gambling business" existed.

The Association does not otherwise dispute that this Liu–Tam operation constituted an "illegal gambling business" for the purposes of section 1955. Therefore, the Association's appeal from the grant of summary judgment must stand or fall on its statute of limitations contentions.[7] *See* Fed.R.Civ.P. 56(c).

### 2. Statute of Limitations

Under 19 U.S.C. § 1621, the government has five years from the date it discovers an "illegal gambling operation" to bring a section 1955 forfeiture action. The Association contends that in 1984 the government knew, or should have known, of the Liu–Tam gambling operation and therefore that the statute of limitations began to run at that time. It relies on two district court cases for two propositions: that section 1621 is the applicable statute of limitations and that section 1621 bars forfeiture actions brought outside of the statutory time period. *See United States v. $116,000 in United States Currency,* 721 F.Supp. 701

---

4. The statute provides that an illegal gambling business is one which: "has been or remains in substantially continuous operation for a period in excess of thirty days *or* has a gross revenue of $2,000 in any single day." 18 U.S.C. § 1955(b)(1)(iii) (emphasis added). The Liu–Tam operation satisfied both of these conditions. Joint App. Vol. 1, at 290–95, 312–29. In addition, the Liu–Tam operation was open for business for two or more successive days, *id.,* and thus under 18 U.S.C. § 1955(c), a presumption arises that the gambling enterprise received gross revenues in excess of $2,000 in any single day.

5. In order to be an "illegal gambling business" under 18 U.S.C. § 1955, a gambling operation must also violate the law of "a State or political subdivision in which it is conducted." 18 U.S.C. § 1955(b)(1)(i). The Association does not con-

test that the gambling operation at the real property was illegal under Minnesota law, and therefore, section 1955(b)(1)(i) is not at issue in this case.

6. 19 U.S.C. § 1621 provides in part:

No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered.

7. The Association raises factual disputes over whether the other gambling operations at the real property meet the statutory definition of a "gambling business." Because we find that the statute of limitations does not bar consideration of the 1984 Liu–Tam gambling operation, we do not reach these other arguments.

(D.N.J.1989); *United States v. R.I.T.A. Organics, Inc.,* 487 F.Supp. 75 (N.D.Ill.1980).

The government did not file this forfeiture action until August 29, 1990. If we were to adopt the Association's contentions regarding the time at which the government discovered the "illegal gambling business," the government would be barred from presenting evidence of any gambling at the real property before August 29, 1985. The district court considered the same arguments and ruled from the bench in favor of the government stating:

> First of all we've had this matter of the statute of limitations that has come up. The Court is going to adopt the affidavit of the FBI that has just been filed, and the Court genuinely believes that the statute of limitations has not run, the action is appropriately before the Court.

Transcript at 20. While the district court's written order made no specific mention of this issue, it did state that:

> [T]he government has presented sufficient evidence to support a finding of probable cause that the defendant property was used to conduct an illegal gambling business in violation of 18 U.S.C. § 1955 and is subject to forfeiture under 18 U.S.C. § 1955(d). The court further finds that On Leong has failed to show by a preponderance of the evidence that the defendant is not subject to forfeiture.

*United States v. 318 South 3rd Street,* No. 3-90-0517, Amended Judgment at 2, (D.Minn. March 10, 1992), Appellant's Addendum at 3. We think the court's oral ruling, coupled with this written order, was an adequate finding that the statute of limitations did not bar this suit.

The timing of the government's discovery of the "illegal gambling operation" and the triggering of the statute of limitations is a factual determination. The Association relies on newspaper articles and local police department reports as support for its

argument that the FBI was aware of the gambling operation at the real property in 1984. These sources standing alone are simply inadequate as a matter of law to impute knowledge to the federal government. The newspaper stories concerned a 1980 robbery at the real property, and the 1984 murder of a prominent On Leong member. Joint Appendix Vol. II, at 441–448. These articles did not focus on gambling at the real property, or on the possibility that an "illegal gambling business" might exist. Instead, these articles merely note that some gambling occurred at the real property. Even if information contained in the news sections of a local daily paper can be imputed to federal investigators, there is nothing in these stories that would have alerted the FBI that an "illegal gambling business" was being carried on at the real property.

The local police reports generated during the 1984 investigation of Hugh Wong's murder did contain information about the gambling operation at the real property. However, for a number of reasons, the mere existence of these reports proves neither FBI knowledge of their contents, nor FBI knowledge that a section 1955 violation occurred at the real property. First, evidence of gambling at the real property was tangential to the primary focus of the murder investigation, and was of interest to the local police only as it related to a possible motive for the homicide. Second, the FBI, the agency with primary enforcement authority under section 1955, was not involved in that murder investigation, and there is no evidence that the local police department forwarded the information about gambling at the real property to the FBI. Third, even assuming that the FBI had constructive notice of the information contained in these local police reports, this information would not constitute notice that a section 1955 violation took place at the real property.[8] Therefore, we find that

---

8. The Association also contends that the involvement of the Drug Enforcement Administration (DEA) and the Department of Alcohol Tobacco and Firearms (ATF) in attempts to trace the Hugh Wong murder weapon, and in attempts to locate suspects in the 1980 robbery, constitute

sufficient notice of the "illegal gambling business" to trigger the statute of limitations. We disagree. The district court was entirely correct in stating:

> it's difficult ... to see where a local police department gets some information, where

the district court did not err in concluding that the evidence concerning the Liu–Tam operation was not barred by 19 U.S.C. § 1615.

### C. *Proportionality*

Finally, the Association urges this court to find a proportionality requirement for forfeitures under 18 U.S.C. § 1955. The Association argues that the forfeiture of the On Leong real property under 18 U.S.C. § 1955 violates both the Eighth Amendment, and the plain meaning of the statute. This court has previously ruled, albeit reluctantly, that " 'if the constitution allows *in rem* forfeiture to be visited upon innocent owners ... the constitution hardly requires proportionality review of forfeitures.' " *508 Depot Street*, 964 F.2d* at 817; (*quoting United States v. Tax Lot 1500*, 861 F.2d 232, 234 (9th Cir.1988), *cert. denied*, 493 U.S. 954, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989)); *But see, Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974) (acknowledging that forfeiture would raise constitutional questions if an owner proved that she was unaware of, and uninvolved in, wrongful action, and that she had done all that reasonably could be expected to prevent the proscribed use of her property). We are constrained, therefore, to find that the Eighth Amendment is not implicated in this case. Having said that much, we turn to an analysis of the statutory requirements for forfeiture under section 1955.

■ The statute provides that "[a]ny property, including money, used in violation of the provisions of this section *may* be seized and forfeited to the United States."

18 U.S.C. § 1955(d) (emphasis added). The Eighth Circuit, sitting en banc, has ruled that the language of this forfeiture provision must be strictly construed. *United States v. South Half of Lot 7 and Lot 8, Block 14*, 910 F.2d 488 (8th Cir.1990). We think that a literal reading of the clause "may be seized and forfeited" allows the courts some discretion in ordering forfeitures. The language is permissive as opposed to the mandatory provisions found in some other forfeiture statutes. *See, e.g.,* RICO, 18 U.S.C. § 1963(a); Continuing Criminal Enterprises (CCE) statute, 21 U.S.C. § 848(a)(2); Comprehensive Drug Abuse Prevention Act, 21 U.S.C. § 881(a). Rather than requiring the automatic forfeitures that those statutes demand, the plain language of section 1955(d) leaves room for judicial discretion.

Congress's choice of this alternative, more equivocal, language for the forfeiture provision in section 1955 is significant. Other courts that have considered the issue have agreed that the language "may be seized and forfeited" should be read to allow discretion in determining whether to allow or refuse forfeitures. *See United States v. Various Denominations of Currency and Coin Totaling $4,280.45*, 628 F.Supp. 4, 8 (S.D.W.Va.1984) ("it would appear appropriate to decline forfeiture where only a minor portion of the property was used for gambling, or the forfeiture, taking into account its effect on the interests of third persons would effect a disproportionate penalty or fail to effect the purposes of forfeiture"); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F.Supp. 1411 (E.D.N.Y. 1988) (same).[9] We think that Congress's

---

that is charged to the Federal agency that's charged under Federal jurisdiction to do particular tasks; ... if the ATF comes in and does something with respect to a weapon, to then charge them with the knowledge of files, you know, that's not realistic because that isn't the way it works. They don't have that knowledge.

 Rather, it seems ... that when a particular given agency opens their files and goes in for a direct purpose of something ... that's when conscious knowledge comes out....

Transcript at 15.

9. In the drug forfeiture context, a panel of this Circuit has stated:

 Nor do we find merit in any underlying "de minimus" argument that the sale of a relatively small amount of cocaine does not warrant forfeiture of the house. The so-called nexus test is not a measure of the amount of drugs or drug trafficking, and we find the proportionality between the value of the forfeited property and the severity of the injury inflicted by its use to be irrelevant.

*Premises Known as 3639–2nd St.*, 869 F.2d at 1096. Under the drug forfeiture statute, 21

employment of the word "may" in the forfeiture provision at issue, rather than the more commonly used "shall," compels a finding that forfeitures are not mandated by the statute, but are left to the discretion of the courts. Therefore, we hold that a court can refuse a forfeiture if it seems to work a disproportionate penalty in light of the peculiar facts of a particular case.

The legislative history behind section 1955, though sparse, supports this interpretation. Section 1955 was enacted as part of the 1970 Organized Crime Control Act, P.L. 91–452. The House Report accompanying this Act stated in relevant part:

> The intent of section ... 1955 ... is not to bring all illegal gambling activity within the control of the Federal Government, but to deal only with illegal gambling activities of major proportions. *It is anticipated that cases in which their standards can be met will ordinarily involve business-type gambling operations of considerably greater magnitude than simply meet the minimum definitions.* The provisions of this title do not apply to gambling that is sporadic or of insignificant monetary proportions. It is intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern....

House Report No. 91–1549, 91st Cong., 2d Sess. *reprinted in* 1970 U.S.C.C.A.N. 4007, 4029 (emphasis added). This language indicates that Congress intended the judiciary to exercise discretion under section 1955. The clear statement that the statute was intended to reach "only those persons who prey systematically upon our citizens" comports with an interpretation of the statute which gives the courts discretion to refuse forfeiture in those cases that "meet the minimum definitions" but are not the "operations of considerably greater magnitude" that Congress envisioned.

■ The Association points out that gambling only occurred on the second floor, and that the building has subsequently been destroyed. From these facts, the Association concludes that only a leasehold estate to the second floor was subject to forfeiture and that as a result of the fire there is nothing left to forfeit. The Seventh Circuit rejected a similar argument in *United States v. On Leong Chinese Merchant's Ass'n Bldg.*, 918 F.2d 1289 (7th Cir.1990).

> Claimant argues vehemently, for example, that the district court should on remand, exercise its discretion to order a proportional, rather than total, forfeiture....
>
> This Court has never held that district courts can mitigate forfeitures at their own discretion.

*Id.* at 1295.

We agree with the Seventh Circuit that district courts do not have the authority to sub-divide property in order to create proportional forfeitures. However, we do think that when concerns of proportionality warrant, the district court may indeed refuse to order a forfeiture under section 1955. The reasoning in *On Leong* does not conflict with our conclusion. The Seventh Circuit explicitly reserved the question of

---

U.S.C. § 881(a), forfeiture is mandatory; the statute states:

> The following *shall be subject to forfeiture* to the United States and no property right shall exist in them: ...

(emphasis added). The court's rejection of a proportionality requirement for forfeitures under 21 U.S.C. § 881(a), therefore, lends little to a discussion about violations of 18 U.S.C. § 1955. Unlike the drug forfeiture statute, 18 U.S.C. § 1955 permits, but does not require forfeitures.

In a concurring opinion, Judge Richard Arnold, now Chief Judge of the Eighth Circuit, explained the language from *Premises Known as 3639-2nd St.* cited above. He stated that the court's language on proportionality was intended:

> to be read in the context of the present case, which raises only issues of statutory interpretation. We are not today foreclosing the possibility that a given use of the forfeiture statutes may violate the Excessive Fines Clause of the Eighth Amendment. Just as a life sentence for a traffic violation would be so disproportionate as to violate the Cruel and Unusual Punishments Clause, so one can imagine applications of the forfeiture statute that would be so draconian as to violate the Excessive Fines Clause.

*Id.* at 1098. (Arnold, J., concurring).

whether or not a court could refuse to order a forfeiture because of proportionality concerns.

This case does not afford this Court an opportunity to decide the precise constitutional or statutory limits of permissible forfeiture under Section 1955(d). Some future case may present a compelling disproportionality claim.

*Id.* at 1296.

Examining this case through the lens of proportionality, however, does not lead us to the conclusion that a disproportionate penalty has been imposed. The real property in question is owned as a single, undivided parcel. The Association knowingly permitted gambling at the real property, and collected a percentage of the profits from the "illegal gambling business." Furthermore, the Association is part of a national organization which facilitated gambling in its member chapters by soliciting contributions to the gambling "bank." This national organization received a percentage of the profits realized from the illegal gambling operations of its member chapters. In short, this case seems to be exactly the sort of situation for which the statute was designed. Therefore, we cannot find that the forfeiture ordered in this case was a disproportionate penalty.

## III.  CONCLUSION

For the reasons detailed above, we affirm the decision of the district court ordering the forfeiture of the real property at issue in this case.