# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-4015

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Larry Richard Hull, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 23, 2009
Filed: May 26, 2010

_____

Before COLLOTON and BENTON, Circuit Judges, and PIERSOL,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Larry Richard Hull was convicted of two counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1). The district court[2] ordered forfeiture of Hull's real property, which consisted of approximately nineteen acres in rural Iowa, pursuant to 18 U.S.C. § 2253(a)(3). Hull appeals the forfeiture order,

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

contending that the evidence was insufficient to support forfeiture of the property under § 2253(a)(3). He also asserts that the district court erred by failing to make adequate findings of fact to determine whether forfeiture was a grossly disproportionate penalty in violation of the Excessive Fines Clause of the Eighth Amendment. We affirm.

I.

In 1999, Hull purchased approximately nineteen acres of unimproved land in rural Treynor, Iowa, by land contract. Hull built a three-bedroom, two-bathroom house and a large barn on the property, and resided there with his wife, Tracy Hull. According to Tracy Hull's testimony, several acres were devoted to yard and garden, ten acres were pasture for three horses, and several more acres were used to grow hay and alfalfa for the horses in the winter. The barn housed a tractor and equipment used to maintain the property, and it included a small riding area for the horses. County assessment records valued the property at $270,857. The records listed Larry Hull as the sole owner, and his equity in the property at the time of the district court proceedings was $192,632.

In 2007, Hull engaged in online conversations with a law enforcement agent who was posing as a mother of two minor children. Special Agent Eric Adams of the United States Secret Service operated under the username "miamimisswith2," and described himself as a Florida mother named "Kathy" with twelve- and nine-year-old daughters named "Kelly" and "Sam," respectively. On several occasions, Hull transmitted images of child pornography to Adams. Hull expressed an interest in performing sexual activities with "Kelly," and encouraged "Kelly" to view his child pornography. He discussed the possibility of the group meeting in Florida or Iowa.

Hull also had online conversations with officers in Missouri and North Carolina who posed as mothers of young females. In each instance, he discussed his desire to

perform sexual activities with the "daughters." Hull conversed with Adams and the other officers, and transmitted child pornography to Adams, from his desktop computer, which was located in the computer room of his house.

On August 3, 2007, law enforcement officers executed a search warrant at Hull's property. During a search of the house, officers observed an online conversation with "miamimisswith2" on the screen of Hull's desktop computer. In the computer room, they also observed a webcam that Hull used in chats with "miamimisswith2." Officers seized Hull's computer and floppy disks, which the district court found to contain a total of 262 images of child pornography.

The grand jury indicted Hull on one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), four counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(1), and one count of attempted enticement of a minor for sexual activity, in violation of 18 U.S.C. § 2422(b). The indictment sought forfeiture of "[a]ny property, real or personal, used or intended to be used to commit or to promote the commission of the offenses alleged," including Hull's entire acreage. Under an agreement with the government, Hull pled guilty to two counts of distribution of child pornography under § 2252(a)(1), and the forfeiture count proceeded to a bench trial.

On December 18, 2008, the district court conducted the bench trial on the forfeiture count in conjunction with Hull's sentencing hearing. After reviewing evidence and hearing argument on the issue, the district court ordered forfeiture of Hull's acreage. The court said it was "comfortable" that the forfeiture was not a grossly disproportionate penalty in violation of the Excessive Fines Clause, because Hull's equity in the property did not exceed the maximum applicable fine. The court imposed no additional fine. Hull appeals the order of forfeiture.

II.

On appeal of a forfeiture order, we review the district court's factual findings for clear error. Whether those facts establish that forfeiture is proper is a mixed question of law and fact that we review *de novo*. *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 825 (8th Cir. 2006). We also review *de novo* whether a criminal forfeiture is grossly disproportionate in violation of the Eighth Amendment. *United States v. Moyer*, 313 F.3d 1082, 1086 (8th Cir. 2002).

A.

Hull's first contention is that the district court erred by ordering forfeiture without proof that he used or intended to use the real property to commit or promote the commission of his offenses, as required for forfeiture under 18 U.S.C. § 2253(a)(3). Hull also argues that even if the house is subject to forfeiture, the remainder of the acreage cannot be forfeited, because that portion of his property was not used in the commission of the offenses. The scope of § 2253(a)(3) appears to be a question of first impression in the federal courts of appeals, although there is considerable case law interpreting similar forfeiture statutes in other contexts.[3]

Section 2253(a)(3), a criminal forfeiture statute, states that a person convicted of a child pornography offense under § 2252 "shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property." Although § 2253(a)(3) does not state the standard of proof required

---

[3]Two circuit courts have affirmed forfeitures of residences ordered pursuant to 18 U.S.C. § 2253 and its civil companion, 18 U.S.C. § 2254, in unpublished opinions and without elucidation. *United States v. 7046 Park Vista Rd.*, 331 F. App'x 406 (6th Cir. 2009); *United States v. Ownby*, 131 F.3d 138 (4th Cir. 1997) (unpublished table decision).

for forfeiture, the parties agree that the district court correctly adopted the preponderance of the evidence standard that is used for other criminal forfeiture determinations. *See United States v. Myers*, 21 F.3d 826, 829 (8th Cir. 1994); *United States v. Bieri* (*Bieri I*), 21 F.3d 819, 821-22 (8th Cir. 1994).

The parties dispute whether the government proved by a preponderance of the evidence that Hull "used" or intended to use real property "to commit or to promote the commission" of his offenses. We may assume for purposes of analysis that, as with the civil forfeiture statute for drug offenses, the government must also show a substantial connection between real property and the child pornography offenses, although the property need not be "indispensable" to the crimes. *See United States v. 3639-2nd St., N.E.*, 869 F.2d 1093, 1096-97 (8th Cir. 1989); *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010) (applying "substantial connection" standard to criminal forfeiture). We conclude that this standard was satisfied.

The ordinary meaning of "use" is "'[t]o convert to one's service,' 'to employ,' 'to avail oneself of,' and 'to carry out a purpose or action by means of.'" *Bailey v. United States*, 516 U.S. 137, 145 (1995) (alteration in original) (quoting *Smith v. United States*, 508 U.S. 223, 229 (1993)). The context in which "used" appears in § 2253(a)(3) suggests no different meaning. We think it clear that Hull "used" his real property "to commit" or "to promote the commission of" the child pornography offenses. He set up a computer in a room in his house, connected to the Internet, and distributed child pornography from there. The evidence showed a substantial connection – not merely an incidental or fortuitous relationship – between the real property and the offenses. To be sure, use of the computer was necessary to commit the offenses, but the real property played a substantial role as well. The house enabled Hull to establish a hardwired connection to the Internet, which allowed him to distribute the contraband. It also provided a secure place to store the images that he later distributed. Use of a computer in the privacy of the residence, rather than in a library, coffee shop, or senior center, made it easier for Hull to conceal his crimes

-5-

from public scrutiny. Hull posits that he could just as easily have used a motel room, but use of the residence avoided rental costs and the attention that would be attracted by frequent visits to local motels.

Hull contends that even if the house was "used" to commit the offenses, the rest of the acreage was not, and that only the house itself should be forfeited. The statute calls for forfeiture of "property" used to commit the offense, but does not further address what constitutes one piece of forfeitable "property." Hull suggests that the court should consider the "residence" separately from "outbuildings" or "farm and pasture land," and require a showing of "use" and "substantial connection" with respect to each portion before it is forfeitable. *Cf. United States v. 817 N.E. 29th Drive*, 175 F.3d 1304, 1308-09 (11th Cir. 1999).

Our cases have concluded, with respect to other criminal forfeiture statutes, 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1), that "the natural source for defining 'property' subject to forfeiture is the instrument creating the defendant's interest in the property." *Bieri I*, 21 F.3d at 824; *see Myers*, 21 F.3d at 829. Given this circuit precedent, and the absence of any material difference in language between these statutes and § 2253(a)(3) on the meaning of "property," we see no basis to adopt a different approach. Hull purchased the acreage in one land contract, and it is described in county records as one unit of property. Because Hull's acreage is a single tract of land that was conveyed to him as a whole, the district court was correct to treat the entire acreage as a single piece of "property" when applying the statute.

Hull suggests that even if the acreage is one piece of "property," the statute still permits the court to subdivide that property when ordering forfeiture. The statute in *Bieri I* mandated forfeiture of "property" that was used "in any manner or part" to facilitate drug trafficking. 21 U.S.C. § 853(a)(2). Because there is no such language in § 2253(a)(3) – the statute simply directs forfeiture of "any property" used to

commit the offense – Hull contends that the statute allows the court to determine whether only a portion of the acreage should be forfeited.

We disagree that the text of § 2253(a)(3) allows for subdivision of the property. Once it is established that the "property" subject to forfeiture consists of the entire acreage, nothing in the statute allows the court to order forfeiture of less than this "property." Although *Bieri I* discussed the "in any manner or part" language of § 853(a)(2), this language in the drug forfeiture statute does not speak to whether forfeitable property may be subdivided. It addresses, rather, how the property must be "used" – i.e., "in any manner or part" – before the "property," as defined by the instrument that created the defendant's interest, is subject to forfeiture. *See United States v. Smith*, 966 F.2d 1045, 1053 (6th Cir. 1992). Thus, the absence of the "in any manner or part" language in § 2253(a)(3) does not materially distinguish this case from *Bieri I* on the question whether only a portion of the property should be forfeited.

Our decision in *United States v. 318 South Third Street*, 988 F.2d 822 (8th Cir. 1993), is even closer on point, and it weighs strongly against Hull's position. That case involved 18 U.S.C. § 1955(d), which allows forfeiture of "[a]ny property" that is "used" in a gambling operation. The "property" at issue there consisted of a two-story building and a parking lot. The defendant urged that because gambling occurred only on the second floor, the forfeiture of "property" should have been limited to that portion of the building. We squarely rejected the contention, holding that "district courts do not have the authority to sub-divide property in order to create proportional forfeitures." 988 F.2d at 828. In addition to the textual difficulties with Hull's apportionment argument, we see no meaningful basis on which to distinguish *318 South Third Street*.

The Assistant United States Attorney advised the district court that this case is the first in which the government sought forfeiture of a home and other real property in Southern Iowa based on a defendant's use of a computer within the home to commit

-7-

a child pornography offense. The government cited what it viewed as an especially "egregious course of conduct" by the defendant as a reason for its exercise of discretion to pursue forfeiture in this case. We conclude that the statute permits this exercise of discretion and authorizes forfeiture of Hull's real property.

B.

Hull's final contention is that the district court erred by failing to make adequate factual findings about whether forfeiture of the property constituted a grossly disproportionate penalty in violation of the Excessive Fines Clause of the Eighth Amendment. He cites our statement in *Bieri I* that "courts must consider the proportionality of the forfeiture, which requires a fact-specific evaluation of all the circumstances of the illegal activity," 21 F.3d at 824, and the decision in *Bieri I* to remand that case for additional findings. *Id.* at 825.

The "principle of proportionality" embodied in the Excessive Fines Clause requires that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). There is no requirement of "strict proportionality"; a forfeiture passes constitutional muster unless it is "grossly disproportional to the gravity of the defendant's offense." *Id.* at 336-37. Although the fines authorized by statute and the sentencing guidelines cannot override the constitutional rule, *id*. at 339 n.14, they are relevant evidence on the question of proportionality. *Id*. at 338-39 & n.14.

Our court has said that if the value of forfeited property is within the permissible range of fines under the sentencing guidelines, then it "is presumptively not excessive," *Moyer*, 313 F.3d at 1086, and, in a bolder statement, that such a forfeiture "'almost certainly is not excessive.'" *United States v. Sherman*, 262 F.3d

784, 795 (8th Cir. 2001) (quoting *817 N.E. 29th Drive*, 175 F.3d at 1310).[4]  These decisions apparently proceed on the view that the sentencing guidelines "are the product of extensive research, thought, input from commentators, and experience," and are "designed to proportion punishments to crimes with even greater precision than criminal legislation," such that a defendant must "present a very compelling argument to persuade us to substitute our judgment for that of the United States Sentencing Commission."  *817 N.E. 29th Drive*, 175 F.3d at 1310.

In this case, to support its conclusion that the forfeiture did not violate the Excessive Fines Clause, the district court observed that the value of Hull's property did not exceed the fine that could be imposed.  More precisely, the record showed that Hull's equity in the property was $192,632, while the maximum fine recommended by the sentencing guidelines for his offenses was $200,000.[5]  The relatively high recommended fine range does not suggest a minimal level of culpability, and a comparison of the forfeiture and the fine range suggests that the forfeiture is, at a minimum, presumptively not excessive.

Nor can it be said that the harm caused by Hull's conduct was minimal.  The damage done by child pornography offenses is well documented, *see United States v. Goff*, 501 F.3d 250, 258-60 (3d Cir. 2007), and distribution of child pornography is especially serious.  *United States v. Kerr*, 472 F.3d 517, 523 (8th Cir. 2006).  The district court found that Hull accumulated 262 images of child pornography, and described the images seized from Hull's residence as "beyond the pale" and "worse than anything" the court had ever seen.  Hull not only possessed these images, which

---

[4]The decision in *Sherman* was vacated in *United States v. Diaz*, 270 F.3d 741 (8th Cir. 2001), but then reinstated at 296 F.3d 680 (8th Cir. 2002).

[5]Tracy Hull filed a petition in the district court, claiming a right to the entire acreage as an "innocent spouse."  After the forfeiture trial, the government and Tracy Hull entered into a settlement agreement, under which Tracy promised to pay $95,000 to the United States, and the government agreed not to forfeit the acreage.

the court found to involve sadistic and masochistic conduct, but he distributed images of child pornography for "Kelly" to view. Hull also discussed engaging in sexual activities with minors, although the district court ultimately did not find that he intended to induce a minor to travel to engage in sexual acts.

There is no need to remand for further proceedings. Unlike *Bieri I*, where the district court "did not indicate that it engaged in a proportionality analysis," 21 F.3d at 824, the district court here specifically addressed the constitutional question and found that the forfeiture was not excessive. On *de novo* review, we agree that the forfeiture of Hull's real property is not grossly disproportional to the gravity of his offenses.

*　　*　　*

The judgment of the district court is affirmed.

_____