# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1403

_____

United States of America

*Plaintiff - Appellee*

v.

Randy Beltramea

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: September 20, 2016
Filed: February 28, 2017

_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

In 2013, Randy Beltramea pled guilty to eight counts of a sixteen-count indictment, including: Counts 1 and 2, wire fraud in violation of 18 U.S.C. § 1343; Count 3, aggravated identity theft in violation of 18 U.S.C. § 1028(A)(a)(1); Count 4, money laundering in violation of 18 U.S.C. § 1957; Count 7, money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(ii) and (a)(1)(B)(i); Counts 8 and 12, false statement to a financial institution in violation of 18 U.S.C. § 1014; and Count 16, tax

evasion in violation of 26 U.S.C. § 7201. United States v. Beltramea (Beltramea I), 785 F.3d 287, 288 (8th Cir. 2015). The district court[1] sentenced Beltramea to a total term of imprisonment of 111 months and 5 years' supervised release, and additionally ordered the forfeiture of real property pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c). Id. at 288-289. Beltramea appealed his sentence and we affirmed the sentence but remanded the forfeiture order for further proceedings. Id. at 291. Upon rehearing, the district court ordered forfeiture of the entirety of Beltramea's Castlerock property (land comprising Parcels A and B of a proposed land development called "Castlerock Estates") pursuant to 18 U.S.C. § 982(a)(1). On appeal for the second time, Beltramea challenges the district court's order forfeiting the property in question. Because we hold that the evidence satisfies the requisite nexus between Beltramea's money-laundering convictions and the entirety of the property at issue, we affirm.

## I.    BACKGROUND

A full recitation of the facts underlying the instant convictions and forfeiture proceeding is set out in Beltramea I, 785 F.3d at 287-89. Relevant here, we highlight the basis for the money-laundering charges (Counts 4 and 7) and the Castlerock property at issue. In the Second Superseding Indictment "Forfeiture Allegations," the government sought forfeiture of six properties, four of which comprise "Castlerock:" (1) the first tract was the developed portion of Parcel B, (2) the second tract was Outlot A of Parcel B, (3) the third tract was the undeveloped portion (26.33 acres) of Parcel B, and (4) the fourth tract was the undeveloped portion (40.620 acres) of Parcel A.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

In Beltramea I, this court remanded the district court's order forfeiting all of the property listed in the Second Superseding Indictment because the record lacked facts establishing a nexus between certain properties and the criminal offenses for which Beltramea was convicted. Id. at 291. Indeed, at the time of Beltramea I, there had been no fact-finding on the forfeiture issue because the parties had proceeded with the forfeiture based upon Beltramea's alleged consent to the preliminary forfeiture order. Id. In Beltramea I, Beltramea argued to this court that the government wholly failed to establish the required nexus between each listed property sought to be forfeited and a count of conviction and thus the forfeiture of all four tracts was improper. As to Counts 4 and 7, particularly, Beltramea argued that the very fact that the government originally identified two of the parcels in the forfeiture allegations as "undeveloped" necessarily meant that Abode Construction (the construction company that performed work at Castlerock) could *not* have done work on those parcels and thus, at the very least, there was no nexus between the laundered money and payment to the construction company for work at Castlerock as to those tracts. Beltramea further claimed that because there was no distinction by the government, in the pleadings or otherwise at that point, as to the work performed on the two *developed* parcels, it was unlikely that Beltramea paid Abode for work performed on Outlot A of Parcel B as well.[2] We reiterated that "[t]he district court had an

_____

[2]We do find irony in the fact that upon remand and after an evidentiary hearing, Beltramea changed course entirely in his arguments regarding the four tracts. On appeal, Beltramea argues that the government only established that work was performed on the *undeveloped* portions of Parcels A and B, and thus *only* those two tracts could be subject to forfeiture. Additionally, at odds with his various ruminations on the matter is Beltramea's alternative argument on appeal, addressed more fully in footnote 3, that the court in Beltramea I "expressly resolved" that there was no factual nexus between the undeveloped portions of Castlerock and the offenses of conviction and thus the law of the case doctrine requires dismissal of the forfeiture allegations pertaining to those parcels. The inconsonant nature of these arguments only highlights the critical role of the evidentiary hearing in these forfeiture matters.

independent duty to ensure that the required nexus exists" in these forfeiture actions. Because there was no record on the matter, we vacated and remanded the forfeiture order for further proceedings. Id.

On remand, addressing the forfeiture issue in an evidentiary hearing for the first time, the government abandoned its quest to seek forfeiture of the three other properties originally identified in the forfeiture allegations. Accordingly, the "forfeiture of Castlerock as it relate[d] to the money laundering offenses in Counts 4 and 7 [was] the sole remaining issue." On that issue, the district court found that the "money laundering offenses underlying the government's forfeiture allegations [arose] from [Beltramea's] attempt to develop approximately eighty acres of land into a housing development called Castlerock." Aided by a factual record created upon remand the district court reviewed the evidence submitted by the government in support of forfeiture of the entirety of Castlerock–all four tracts–and held that the government established the requisite nexus between Beltramea's money-laundering convictions, Counts 4 and 7, and the entirety of Castlerock. Beltramea appeals.

## II.   DISCUSSION

"On appeal of a forfeiture order, we review the district court's factual findings for clear error. Whether those facts establish that forfeiture is proper is a mixed question of law and fact that we review *de novo*." United States v. Hull, 606 F.3d 524, 526-27 (8th Cir. 2010). Beltramea challenges the district court's forfeiture of Castlerock on myriad grounds, including claims that the court exceeded the scope of the Eighth Circuit's mandate,[3] that there is an insufficient connection between the

[3]Beltramea argues that in Beltramea I, the Eighth Circuit "expressly resolved" that there was no factual nexus between the undeveloped portions of Castlerock and the offenses of conviction and thus the law of the case doctrine requires dismissal of the forfeiture allegations pertaining to those parcels. This argument is without merit. In Beltramea I, this court plainly held that the record "appeared" lacking in facts

offenses of conviction and the entirety of Castlerock, that the district court erred in forfeiting the entirety of the property because the exact amount of the fraud proceeds used to benefit portions of the property are readily available, as well as various evidentiary challenges.

The property subject to forfeiture in this action and the forfeiture analysis itself are intertwined issues on these facts. Although the parties primarily focus on how much of Castlerock, or how many tracts or parcels that make up Castlerock, should be forfeited, the analysis under 18 U.S.C. § 982(a)(1), required to succeed in the forfeiture endeavor at the outset, is part and parcel of the query and drives our analysis today. According to § 982(a)(1), the court, in imposing a sentence on a person convicted of a federal money-laundering offense, "shall order that the person forfeit to the United States any property, real or personal, *involved in* such offense, or any property *traceable to* such property." 18 U.S.C. § 982(a)(1) (emphasis added). Pursuant to Federal Rule of Criminal Procedure 32.2(b)(1)(A), "[i]f the government seeks forfeiture of specific property, the court *must* determine whether the government has established the requisite nexus between the property and the offense." Id. (emphasis added). "The government must prove the elements of forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence." Beltramea I, 785 F.3d at 290.

The district court held that the impetus for the fraud and money laundering at issue in the underlying charges was Beltramea's desire to develop Castlerock; that Beltramea specifically reached out to his former investment clients in 2005 seeking

---

establishing the requisite nexus between a portion of the property in question and the offenses of conviction and thus remanded the forfeiture order for the district court to remedy the error. Beltramea I, 785 F.3d at 291. Indeed, there had been no evidentiary hearing at the time of Beltramea I. The stage was thus set for the district court to conduct an evidentiary hearing regarding the entirety of the property discussed in the forfeiture allegations.

funds to use on the Castlerock development. This finding was not clearly erroneous based on the facts presented. It is clear that the deception took place, and the money was laundered, for one purpose–to develop Castlerock–and that Castlerock was central to the entirety of Beltramea's scheme. Beltramea fraudulently misrepresented to his former clients the purpose for which he intended to use their funds, telling the clients he would use the funds to purchase and operate a series of Subway restaurants.

As more fully set out in Beltramea I, based on Beltramea's misrepresentations, two clients wrote checks in the amount of $50,000 and $75,000, respectively, both checks payable to "Angelwing Equity," which was Beltramea's real estate investment company. These two payments formed the bases for the money-laundering Counts 4 and 7. According to testimony, Beltramea deposited the $50,000 check in an Angelwing account and then "immediately wrote a $44,831.10 check to Abode Construction" to pay an invoice for work that Abode performed at Castlerock, spanning both Parcels A and B. This payment provided the basis for the money-laundering charge in Count 4. Count 7 related to Beltramea's use of the $75,000 check. According to the district court's findings, Beltramea deposited this money into an Angelwing account. Following that deposit, Beltramea made two cash withdrawals and then closed the Angelwing account and opened a bank account in his mother's name using the remaining funds ($65,472.02 to be exact) from the $75,000 "investment." Then, using funds from this newly created account, Beltramea made a $16,058 payment on a past-due consolidated loan with Community Savings Bank (CSB) and a $16,303.50 payment on a past-due invoice from Abode Construction for work done on both Parcels A and B of Castlerock.

The parties dispute whether this is an "involved in" or "traceable to" matter under § 982(a)(1). In its forfeiture order, the district court is not entirely clear as to which analysis controls, citing principles from both "involved in" and "traceable to" analyses in caselaw in arriving at its determination that the entirety of Castlerock was subject to forfeiture. Citing United States v. Myers, 21 F.3d 826, 831 (8th Cir. 1994)

(relying on the "involved in" language of § 982(a)(1) and holding that when payments toward a real estate contract and improvements on property are made with laundered money, the property that benefitted from those payments is subject to forfeiture); United States v. Real Prop. & Premises, 657 F. Supp. 2d 1060, 1069 (D. Minn. 2009) (interpreting the "traceable to" language in the civil forfeiture equivalent to § 982(a)(1), for purposes of a determination on a pending motion to dismiss, to leave "no serious dispute that, by spending allegedly tainted funds on renovations and property taxes for [the relevant property], the property is 'traceable to' a money-laundering offense"). However, even if the district court conflated the § 982(a)(1) analysis, on these facts it is not surprising, as there is arguably support in our precedent for either an "involved in" or "traceable to" resolution given the factual and legal variations that precede today's opinion.

On appeal, Beltramea argues that the government has waived any argument that this is an "involved in" case. We disagree and find that, in fact, forfeiture is warranted in this case because Castlerock was utilized to facilitate the laundering offenses; that it was "involved in" Counts 4 and 7. The government argued to the district court, and to this court on appeal, that the development of Castlerock was integral to Beltramea's fraud scheme and the money-laundering charges, and thus on that basis Castlerock was property "involved in" the laundering for purposes of § 982(a)(1) forfeiture. The district court's factual finding that at the outset Beltramea approached his former clients for money for the purpose of developing Castlerock supports this notion.[4] On these unique facts, an "involved in" analysis under § 982(a)(1) is better suited. See Myers, 21 F.3d at 831 (holding that because the defendant used laundered money to make substantial payments on a real estate

_____

[4]The district court held, "[a]fter 2005, in his efforts to develop Castlerock, [Beltramea] contacted former investment clients to solicit funds for his use on the [Castlerock] project."

contract and improvements on the property at issue, the property was forfeitable because it "was clearly involved in the criminal activity" for purposes of § 982(a)(1)).

In United States v. Hawkey, 148 F.3d 920 (8th Cir. 1998), we explicated the difference between property "involved in" an offense and property "traceable to" such property. Id. at 927. "Property 'involved in' an offense include[s] the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense." Id. (quoting United States v. Bornfield, 145 F.3d 1123, 1135 (10th Cir. 1998)). The facilitation of a laundering offense "occurs when the property makes the prohibited conduct 'less difficult or more or less free from obstruction or hindrance.'" Id. at 928 (quoting United States v. Tencer, 107 F.3d 1120, 1134 (5th Cir. 1997)). Correlatively, "[p]roperty '"traceable to" means property where the acquisition is attributable to the money laundering scheme rather than from money obtained from untainted sources.'" Id. (quoting Bornfield, 145 F.3d at 1135). Here, Beltramea did not acquire Castlerock with the laundered money underlying Counts 4 and 7, thus rendering any "traceable to" analysis more attenuated, at best. See id. at 928 (explaining that when the acquisition of property is attributable to a transaction that violates 18 U.S.C. § 1956 or § 1957, then the entire property is subject to forfeiture as "traceable to" property). And, noted above, it is established that Beltramea committed these offenses for the purpose of developing Castlerock, thus the property was intricately "involved in" the offenses from the outset.

The district court held that the entirety of Castlerock was subject to forfeiture because Beltramea used laundered funds (1) to pay on the CSB loan, which was secured by the entire property, and (2) to make improvements upon both Parcels A and B. Because we can resolve this matter by establishing the requisite nexus between the entirety of Castlerock and payments made with laundered money toward improvements on Parcels A and B, we need not determine whether Beltramea's

interest-only payment on the loan suffices to establish a nexus supporting forfeiture of property under § 982(a)(1) (Count 7).

First, to discern the property subject to forfeiture on these facts, we note that at the forfeiture hearing the government argued that Castlerock was a single piece of property subject to forfeiture. As it presented its evidence, the government, through its witnesses, pointed out whether particular evidence was relevant as to Parcel A, Parcel B, or both parcels. And, in its forfeiture analysis, the district court accurately noted that the real property listed by the government in the forfeiture allegations included land comprising Parcel A and Parcel B of the proposed land development. The court then reviewed the evidence as it related to Parcels A and B and determined that because there was sufficient evidence connecting both parcels to the offenses of conviction, the entirety of Castlerock was forfeited. Looking at Castlerock as two parcels was the correct approach in this matter.

The definition of "property" in this, and similar, forfeiture statutes is discussed in United States v. Hull, wherein the court was tasked with defining what constituted "property" under § 18 U.S.C. § 2253(a)(3), a criminal forfeiture statute applicable in the distribution of child pornography context.[5] 606 F.3d 524, 528 (8th Cir. 2010). The court in Hull discussed the scope of § 2253(a)(3) by looking at caselaw analyzing § 982(a)(1) given "the absence of any material difference in language between [§ 2253(a)(3) and § 982(a)(1)] on the meaning of 'property.'" Id. In Hull, in a situation akin to the "involved in" analyses of § 982(a)(1), we established that "the natural source for defining property subject to forfeiture is the instrument creating the defendant's interest in the property." Id. (quoting United States v. Bieri, 21 F.3d 819, 824 (8th Cir. 1994)).

_____

[5]Section 2253(a)(3) states that a person convicted of a child pornography offense under § 2252 "shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property."

-9-

After determining that the instrument creating the defendant's interest defines the "property" subject to forfeiture, the court additionally held that "[o]nce it is established that the 'property' subject to forfeiture consists of the entire [property], nothing in the statute allows the court to order forfeiture of less than this 'property.'" Id. Further, this court has plainly held that "district courts do not have the authority to sub-divide property in order to create proportional forfeitures." Id. at 529 (quoting United States v. 318 S. Third St., 988 F.2d 822, 828 (8th Cir. 1993)). On these facts, Beltramea's acquisition of, and the instruments creating his ownership interest in, Castlerock is thus the focus when determining what property is subject to forfeiture in this matter, and was the correct framework for the district court's determination on remand. The fact that Beltramea had further subdivided the property for development is not determinative in the § 982(a)(1) analysis. See Bieri, 21 F.3d at 824 (holding that "[a]lthough the owner may view a single piece of property as separable tracts, the owner's subjective characterization of the property cannot serve as the basis for determining what constitutes 'property' under [21 U.S.C. §] 853[,]" it is the instrument creating the defendant's interest that directs the inquiry).

Beltramea funded his initial purchase of Castlerock with a $270,000 loan from CSB in 2000, and later in 2004 received a line of credit from CSB in the amount of $500,000 to further fund Castlerock. Beltramea thus acquired Castlerock in two stages, obtaining Parcel A in 2000 and Parcel B in 2004. Those instruments were then consolidated in a 2009 refinancing secured by the entire property. Accordingly, Beltramea's suggestion that the court should have subdivided Castlerock into the four tracts in its forfeiture analysis is without support in the statutory scheme and this circuit's caselaw. Hull, 606 F.3d at 528. The tracts of land comprising the entirety of Castlerock were set out in the forfeiture allegations, and nothing in § 982(a)(1) allows the court to order forfeiture of less than the "property." Id. at 528-29.

In the final § 982(a)(1) analysis, looking at the nexus between Parcels A and B and the offenses of conviction, the record reflects that the government presented

ample evidence that Parcels A and B were used to facilitate the violations charged in Counts 4 and 7. Most critically, an employee of Abode Construction testified about individual invoices paid by Beltramea that underlie each count. As to each, the representative identified work completed by Abode that was included on the invoice, testifying specifically whether that work was completed on Parcel A, Parcel B or both parcels. Based on this evidence, the district court did not clearly err in forfeiting the entirety of Castlerock, as it was "involved in" Beltramea's offenses of conviction. Too, and most importantly, we reiterate that the development of Castlerock was central to the entirety of Beltramea's scheme from the outset.

In sum, after conducting an evidentiary hearing in this matter, the district court concluded that the government had established the requisite nexus between the property and the offenses of conviction. Based on the factual findings discussed herein, we cannot say that the district court's finding that there was the requisite nexus between Castlerock and the offenses of conviction was clearly erroneous.[6] See United States v. Ways, 832 F.3d 887, 899 (8th Cir. 2016), cert. denied, 2017 WL 320816 (Feb. 21, 2017). Accordingly, the district court did not err in entering the order of forfeiture.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[6]Beltramea additionally argues that the district court erred in admitting certain exhibits but concedes that he was likely not prejudiced by this error. He raises this claim only to preserve his right to argue that he was prejudiced if the government relied upon any of the challenged exhibits on appeal. Because the government did not address the exhibits, we do not address this final argument.